# GENERAL ELECTRIC COMPANY v. WICK O'CONNELL.[1]

May 31, 1912.

Nos. 17,528—(105).

**Answer sufficient as against demurrer.**

> Answer, in an action for the price of machinery, setting up fraud on the part of the seller in obtaining the written contracts sued on, and claiming damages on account thereof, *held* not obnoxious to demurrer, on the ground that its establishment would involve the admission of parol evidence to vary the terms or the scope of the said contracts.

Action in the district court for St. Louis county to recover $1,583.60, balance of the purchase price of certain electric drills. From an order, Cant, J., overruling plaintiff's demurrer to the answer, it appealed. Affirmed.

*Houpt, Oakley & Dickey,* for appellant.

*O. J. Larson* and *M. E. Louisell,* for respondent.

PHILIP E. BROWN, J.

This is an appeal by the plaintiff from an order overruling its demurrers to the answer and alleged counterclaims of the defendant, on the ground that the answer does not state facts sufficient to constitute a defense or counterclaim.

It appears from the complaint that the Fort Wayne Electric Works, a corporation, on December 17, 1910, entered into a written contract with the defendant, whereby it sold to him certain rock drills and equipment for the agreed price of $1,550, payable one-half in cash and the remainder within thirty days; and for a second cause of action the plaintiff alleges that on January 6, 1911, the said Fort Wayne Electric Works entered into another written contract with the defendant, whereby it sold him certain other drills and apparatus for the sum of $1,550, payable on the same terms as above stated.

[1] Reported in 136 N. W. 404.

The complaint further alleges, with reference to both causes of action, that the said drills, equipment, and apparatus were duly delivered to the defendant; that on June 1, 1911, the said Fort Wayne Electric Works assigned the said contracts to the plaintiff; and that no part of the purchase price of the said drills and equipment has been paid, except the sum of $775 on each contract. Neither of the said contracts, which were set out in the complaint, contained any warranty; and both included a provision to the effect that there were no understandings, promises, or agreements on the part of either of the parties, other than those stated in the said contracts. ·

The defendant, in his answer, admitted the execution of the said contracts, the delivery of the property to him as claimed by the plaintiff, and that the defendant had paid nothing thereon, except as stated in the complaint, and set out, both as a defense and as an alleged counterclaim thereto, that before the defendant executed the said written contracts the said Fort Wayne Electric Works, to induce him so to do, falsely and fraudulently represented to him that it had made a test of the said drills and equipment with a certain rock from the site of a certain tunnel, which the defendant had theretofore contracted to construct, and which he was then constructing, and which rock was a fair sample of the material the defendant would encounter in the prosecution of such work, all of which the said Fort Wayne Electric Works then knew; that the said drills and equipment were procured to drill the said tunnel, of which the said Electric Works was advised before the execution of the said contracts; that the said Electric Works, further to induce the defendant to sign the said contracts, falsely and fraudulently represented to him, among other things, that the said drills and equipment would bore fifty lineal feet per day in the said tunnel, and guaranteed that they would do so; that such representations were relied upon by the defendant, and that he was thereby induced to execute the said contracts; that all of the said representations were false, and were known so to be by the said Electric Works; that thereafter the defendant, relying upon the said representations, permitted the said drills to be installed on the said work, and attempted to construct the said tunnel there-

with; that they did not and could not be made to do the said work, and did not have to exceed twenty-five per cent of the capacity which they were represented to have; that thereafter the defendant insisted on returning the same to the said Electric Works, and on repudiating and rescinding the said contracts for such fraud, whereupon the said Electric Works represented that the defendant's laborers were incompetent, and that because thereof the drills failed to do the work, all of which representations were false, and were known so to be by the said Electric Works, and guaranteed to the defendant that if he would permit its expert to take charge of the said work the drills would be made to do the work speedily and successfully, and that they would do at least the amount of work per day theretofore represented, and that the said drills had the capacity aforesaid; that the defendant relied upon such representations and believed the same, and was thereby induced to allow the said Electric Works' agent to take charge of the drills, and that such agent undertook to do the work, but failed therein, and could not do work to exceed twenty-five per cent of the represented capacity of the drills; that such drills broke and flattened out; that by reason of their failure to do the work a number of the defendant's employees remained idle, though drawing wages from the defendant; that the drills and equipment were valueless for the work; that the defendant necessarily spent $3,000 for equipment in installing the drills and in attempting to make them work, one-half whereof was a loss to the defendant because of the fraud aforesaid; and that the defendant suffered certain other damages.

The sole contention of the plaintiff (appellant) is that the establishment of the defendant's so-called counterclaim would necessarily involve the admission of parol evidence to alter the scope and meaning of the written contracts sued upon, which said contracts purport, both in law and by their express terms, to embody the entire agreement between the parties; and that hence the defendant's answer and so-called counterclaim are obnoxious to the demurrers interposed thereto.

In support of this contention, the plaintiff relies largely upon

Haycock v. Johnston, 81 Minn. 49, 83 N. W. 494, 1118. That case was an action to recover rent under a written lease. The defense sought to be established, so far as is here material, was that the defendant was entitled to a cancelation of the lease, because the plaintiff had violated a parol collateral agreement, made at the time the lease was executed, not to erect a new building within a certain distance of the one leased to the defendant; and, further, that the plaintiff never intended to carry out such agreement, though fraudulently representing that he would do so, and thereby inducing the defendant to lease the premises; and for this fraud a cancelation of the lease was prayed. The land on which this new building was erected by the plaintiff was not covered by the lease, and it is apparent that the gist of the controversy in that case was the right of the defendant to have the lease canceled on the ground alleged; and the court was clearly right in holding, as declared by Mr. Justice Brown at page 52, that the defendant could not "be permitted to enlarge his contract by adding thereto the alleged parol collateral agreement, and then have it [the lease] canceled and annulled for a violation of the parol provision so added." In the opinion in that case, it was further observed: "Neither is there any merit in the claim that the lease was obtained by fraud; that by reason of fraudulent representations on the part of plaintiff, at and before the execution of the lease, with respect to the location of the new building, defendant is entitled to a cancelation of the lease. All agreements and promises made and entered into by either party preliminary to and simultaneously with the execution of the lease, and with reference thereto, are conclusively presumed to be embodied and contained in the written contract. In no proper view of the law, can we construe the alleged collateral agreement with reference to the location of the new building to be or constitute a part or portion of the written lease. It should have been incorporated in the writing."

It is apparent that the question decided in the case referred to was that the defendant, under the facts, could not be allowed a cancelation of the lease; and it is clearly distinguishable from the instant case. The only effect which can be given to the language in that case,

quoted above, as bearing on the question here involved, is to exclude parol evidence of any prior or contemporaneous alleged guaranty of the machinery sold to the defendant. In effect, it was attempted in the Haycock case to inject into the lease an agreement, on the part of the lessor, in the nature of a condition subsequent, to refrain from doing something in the future; and it was sought to have the lease annulled for the violation of such agreement; whereas here the attempt is, not to inject anything into the contracts, but to recover damages for the fraud and deceit practiced in obtaining them.

As to whether one who has, by fraud, been induced to execute a written contract, and to incorporate therein a statement that there are no other agreements or understandings between the parties, may recover damages therefor, we have no doubt whatever. His right in such a case is entirely clear, where the fraud relates to some entirely collateral matter, or where it relates to the contents of the instrument, or consists of some device or artifice by which he is induced to execute an instrument which he did not intend to execute. Likewise, where the fraud consists of representations regarding the subject-matter of the contract, aside from its agreements and promises, it is well settled that one cannot escape the consequences of his fraud by hiding behind an instrument secured by such fraud. In such cases, the law sweeps away the instrument, and leaves the guilty party to face his accuser. Nothing is added to or taken away from the instrument; and, if, in a particular case, such seems to be the effect, it is only seeming—the fraud being no less fraud because it relates to matters purporting to be covered by the terms of the instrument. This doctrine has been applied a number of times by this court. In Kerrick v. G. W. Van Dusen & Co. 32 Minn. 317, 20 N. W. 228, which was an action to recover the price of a machine for grinding corn, it was held that the defendant might, upon an issue of fraud in the procurement of the written contract sued on, introduce evidence of parol representations as to the capacity of the machine. "The appellant contends that parol evidence of the representations was not admissible, the contract having been, as is claimed, reduced to writing," said the court at page 318.[1] "The rule invoked has no application in

[1] [20 N. W. 229.]

respect to fraudulent inducements to the making of the contract, and where the obligation of the contract is sought to be avoided by reason of the fraud."

In Haven v. Neal, 43 Minn. 315, 45 N. W. 612, a purchaser of logs was allowed a recovery against the seller for the latter's fraud in misrepresenting the kind, quality, and value of the logs, notwithstanding that the contract of sale was in writing, and simply called for a certain quantity of logs at a certain price. In Vilett v. Moler, 82 Minn. 12, 84 N. W. 452, a recovery was allowed for fraud in inducing the plaintiff to take a course in the defendant's barber college. The contract for tuition was in writing; but evidence of collateral representations, both parol and written, as to the time it would take to complete the course was admitted, though the contract contained only an estimate of such time.

"With reference to such trial," said Chief Justice Start at page 17,[1] "it is proper to add that it was not error for the trial court to receive in evidence the advertisements, correspondence between the parties, and the oral representations of the defendants, published, had, and made before the contract was signed. The gist of this action is not the breach of the contract, but the defendant's alleged fraud; hence the rule invoked by the defendants, that parol evidence is not competent to vary a written contract, has no application to this case."

Decisions from other states are numerous and equally as conclusive against the appellant's contention on this branch of the case. In American v. Elliott, 151 N. C. 393, 66 S. E. 451, 31 L.R.A. (N.S.) 910, which was an action for the price of goods sold to the defendant, it was held that the defendant might show by parol that he was induced to enter into the contract by fraudulent representations as to the quality of the goods, regardless of whether the contract was in writing or not. In Rectenbaugh v. Northwestern, 22 S. D. 410, 118 N. W. 697, which was an action by a purchaser of machinery to recover back the purchase price thereof, and for special damages, it was held that the plaintiff might show that he was induced to purchase the machinery by the false and fraudulent representa-

[1] [84 N. W. 454.]

tions of the defendant's general agent that the defendant would furnish the plaintiff with a machine that had been used only ten days, and that was in good working order, and that the contention that such evidence was inadmissible as tending to contradict the terms of the written instrument between the parties, which called merely for "one Port Huron traction engine, twenty horse power, traction rating, simple compound," was clearly untenable.

Seitz v. Brewers' Refrigerating Machine Co. 141 U. S. 510, 12 Sup. Ct. 46, 35 L. ed. 837, cited in the memorandum of the trial court and also relied on by the appellant as supporting its contention, is really against such contention. The right of the defendant in that case to set up fraudulent parol representations as to the capacity of the cooling machine furnished to him by the plaintiff was distinctly recognized; but the defense failed, because the evidence failed to establish the alleged fraud.

We hold that the defendant's so-called counterclaims state matters proper to be interposed by way of recoupment to the plaintiff's cause of action, and that the same are not vulnerable to attack by demurrer. The defendant has somewhat loosely designated his claim for recoupment as a counterclaim; but the pleadings are nevertheless sufficient to show that the defendant has elected to keep the machinery purchased from the plaintiff's assignor, and to recoup the damages, if any, for such assignor's alleged fraud in diminution or extinction of the unpaid portion of the purchase price; and this he may do, although, of course, he cannot have any affirmative relief against the plaintiff. Townsend v. Minneapolis Cold-Storage & Freezer Co. 46 Minn. 121, 48 N. W. 682.

Some other questions were suggested in the respondent's brief; but we do not deem it necessary to consider them. Order affirmed.