## PAUL R. HAFNER AND ANOTHER, COPARTNERS, v. JOHN B. RITZINGER AND ANOTHER.

97 N. W. (2d) 839.

July 10, 1959—No. 37,726.

*Lewis L. Anderson,* for appellants.

*John E. Daubney* and *Bouthilet, Daubney & Swenson,* for respondents.

KNUTSON, JUSTICE.

This case arises out of the sale of a house by plaintiffs to defendants. Plaintiffs, Paul R. Hafner and Sarah G. Hafner, are husband and wife. Paul R. Hafner has been engaged in the business of building and selling houses for about 25 years. Mrs. Hafner took no part in the sales transaction involved here except to sign certain papers, and she did not testify. References hereinafter to plaintiff will refer to Paul R. Hafner and not his wife.

In the month of December 1955, defendants, who are husband and wife, purchased a home from plaintiff located at 910 Edgewater Avenue West in the village of Shoreview, Ramsey County, for the sum of $29,500. Sometime after purchasing this home, defendants had plaintiff do some additional work on a porch. When defendants failed to pay for this additional work, plaintiff sued to recover the sum of $423.10. Defendants admitted liability for that amount and counterclaimed for $2,500 damages as a result of fraudulent representations made by plaintiff in the sale of the house. The case went to trial on the counterclaim, and the jury returned a verdict of $1,750 for defendants. This appeal is from an order of the municipal court denying plaintiff's motion in the alternative for judgment notwithstanding the verdict or for a new trial.

Viewing the evidence most favorable to the verdict, as we must do, the jury could find that in the early summer of 1955 defendants had made several visits to homes in the process of construction by plaintiff.

They were interested in purchasing a new home, but the homes then under construction were smaller than they wanted so they decided to wait until one more suitable to their needs was constructed. On a Sunday in December 1955, defendant John B. Ritzinger first called at the house which was later purchased to inspect it. Plaintiff was then present in the house. In the afternoon of the same day, Mrs. Ritzinger called to inspect the house. Plaintiff had built some 18 houses in the immediate neighborhood of the one purchased by defendants prior to the time of this sale. Defendants were familiar with the fact that plaintiff had built several houses in that neighborhood. After inspecting the house, John B. Ritzinger asked plaintiff whether he "had any water condition in the area and also what situation might exist in the basement of that house." Plaintiff replied that "he couldn't guarantee any basement, but he had built all the homes in that immediate area and he had yet to build a house with a wet basement." The same answer was given to a similar question when Mrs. Ritzinger was there to inspect the house in the afternoon. While these answers are denied by plaintiff, the jury could accept defendants'. version of the conversations which took place.

There is no dispute that commencing on Easter Sunday in 1956 substantial quantities of water entered the basement at the junction of the cement block foundation with the basement floor. Defendants have alleviated part of the trouble by installing drain tile at the outside of the foundation walls at considerable expense.

There is evidence from which the jury could find that at least two other houses built by plaintiff in the immediate neighborhood of that purchased by defendants had similar water trouble and that plaintiff may have had knowledge thereof at the time defendants inquired of him concerning water conditions in the basement.

Defendants have four children ranging in age from 5 to 14 years. They had intended to use the basement as a recreation room. Both defendants testified that they would not have purchased the house at all if they had known that they would have trouble with water in the basement.

The questions presented on this appeal are: (1) Whether the trial court erred in receiving evidence as to the alleged representations made

by plaintiff prior to the execution of the contract for deed, it being the contention of plaintiff that such evidence varies the terms of a written contract; (2) whether the elements of actionable fraud were shown to be present, assuming that the statements testified to by defendants actually were made; (3) whether the witness Bettendorf was qualified to testify as an expert on the value of the house with or without the water condition which existed; (4) whether the quantum of proof as outlined in the court's instructions was correct; and (5) whether there was such misconduct of defendants' counsel as to justify a new trial.

■ Apparently it is plaintiff's contention that, even if the statements regarding water conditions in the basement were made as claimed by defendants, the defendants thereafter signed an earnest money contract and later a contract for deed in which no reference is made to such representations; hence, that it follows that evidence of such oral representations are inadmissable under the rule that oral evidence may not be admitted to vary the terms of a written contract. It is obvious that plaintiff's position is based on a misconception of the application of the rule. Evidence of fraudulent representations is not admitted to vary the terms of a contract but to establish that, because of such fraudulent representations, the purchaser did not get what he bargained for. In Rosenquist v. Baker, 227 Minn. 217, 222, 35 N. W. (2d) 346, 349, we said:

"It is well settled that the parol evidence rule is not applicable to exclude evidence of fraudulent oral representations by which one party induces another to enter a written contract, provided the representations were such that the other party might reasonably rely upon them."[1]

If plaintiff's contentions were tenable, a purchaser could seldom, if ever, recover damages for a fraudulent representation in the sale of real estate.

■ The rules respecting the right to recover for a fraudulent representation in the sale of property are adequately stated in 8 Dunnell,

---

[1]See, also, McElrath v. Electric Investments Co. 114 Minn. 358, 131 N. W. 380; Nelson v. Berkner, 139 Minn. 301, 166 N. W. 347.

Dig. (3 ed.) § 3818, and have been stated in a number of recent decisions of this court.[2] As found in § 3818—

"A person is liable for fraud if he makes a false representation of a past or existing material fact susceptible of knowledge, knowing it to be false, or as of his own knowledge without knowing whether it is true or false, with intention to induce the person to whom it is made to act in reliance upon it, or under such circumstances that such person is justified in acting in reliance upon it, and such person is thereby deceived and induced to act in reliance upon it, to his pecuniary damage."

In Spiess v. Brandt, 230 Minn. 246, 254, 41 N. W. (2d) 561, 567, 27 A. L. R. (2d) 1, 9, we said:

"* * * where representations are made by a party who is presumed to know their truth, reliance thereon will be presumed. * * * We have repeatedly held that one who deceives another to his prejudice ought not to be heard to say in defense that the other party was negligent in taking him at his word."

Plaintiff contends that, when he said that he could not guarantee any basement from water, defendants had no right to rely on his statement that he had never had trouble with water in the basement of any house he had built. The two parts of the statement must be taken separately. The mere fact that plaintiff was unwilling to guarantee the basement from seepage does not absolve him from liability for the assurance that he had never had water trouble in any of the houses he had built, if such statements come within the rules we follow as stated above.[3] The jury could find that such assurance was given; that it was either false and known to be such by plaintiff or was made as a statement of fact without knowledge of its truth or falsity; and that it was relied upon by defendants. Inasmuch as the evidence will sustain such finding, the right to recover damages follows. The facts in this case are quite similar to those in Forsberg v. Baker, 211 Minn. 59,

---

[2]Swanson v. Domning, 251 Minn. 110, 86 N. W. (2d) 716; Osborn v. Will, 183 Minn. 205, 236 N. W. 197.
[3]See, Osborn v. Will, 183 Minn. 205, 236 N. W. 197.

300 N. W. 371, except that in this case there was too much water and in the Forsberg case there was not enough. We there said (211 Minn. 62, 300 N. W. 373):

"* * * the statement in respect to the future of the well could not be understood as more than a mere opinion; but the statement that there never had been any trouble with the well was a representation of a past fact which, if false, would be actionable even though the representation was not known to defendant to be false when made."

■ Plaintiff next contends that the quantum of proof required to establish fraudulent representation is something more than a fair preponderance of the evidence. We have held in a number of cases[4] that a fair preponderance is sufficient to establish actionable fraud. The cases relied upon by plaintiff deal with actions to set aside, reform, or annul written contracts. The distinction between the two types of cases is shown in our prior decisions.[5]

■ Defendants called, as an expert witness on the issue of the value of the property, one Joseph Bettendorf. Plaintiff contends that he lacked qualifications to testify for the reason that he had not bought and sold real estate in Ramsey County. Mr. Bettendorf has been engaged as a real estate appraiser since 1938. He has appraised property extensively in Ramsey County. As an appraiser, he has acted for the Federal Housing Administration, the Veterans Administration, several villages, and others. Appraisal of real estate necessarily involves a determination of value. Determination of the sufficiency of the qualifications of an expert witness rests largely with the trial court. Obviously it is not necessary to buy and sell real estate in order to be able to determine its value. As a matter of fact, an impartial, experienced appraiser might be better qualified in some cases to determine value of

[4]Schmeisser v. Albinson, 119 Minn. 428, 138 N. W. 775; Tyra v. Cheney, 129 Minn. 428, 152 N. W. 835; Tischer v. Bardin, 155 Minn. 361, 194 N. W. 3; Dowden v. Kanuch, 158 Minn. 75, 196 N. W. 819; Rother v. Hiniker, 208 Minn. 405, 294 N. W. 644; Spiess v. Brandt, 230 Minn. 246, 41 N. W. (2d) 561, 27 A. L. R. (2d) 1.

[5]Schmeisser v. Albinson, *supra*; Tyra v. Cheney, *supra*; General Elec. Co. v. O'Connell, 118 Minn. 53, 136 N. W. 404.

real estate than one who is interested in prices from the standpoint of buying or selling it. Mr. Bettendorf's qualifications as an expert on values were sufficiently established.

■ Only one other question remains, which relates to the alleged misconduct of defendants' counsel. Defendant sought to show that a Mr. Caldwell had purchased a house from plaintiff and that he had had trouble with water in his basement similar to that complained of by defendants. In his argument to the jury, defendants' counsel stated that Mr. Caldwell called on plaintiff each month for the purpose of making a payment on his contract, intending thereby to leave with the jury the impression that in all probability Mr. Caldwell had informed plaintiff of his water trouble. Plaintiff now contends that as a matter of fact Caldwell made payments on his contract only once each year.

It appears that counsel for defendants might have been in error in his statement to the jury, but we doubt that the statement was of sufficient importance so that it influenced the jury's verdict. Granting a new trial for misconduct of counsel rests largely with the trial court. It was not essential that plaintiff have actual knowledge of the water difficulties which Mr. Caldwell had. If he made the statement that there had never been any water trouble in any of the houses he had built, and such statement was false, it would be actionable even if he did not know it was false. We find no abuse of discretion in denying a new trial on this account.

It might be stated that the questions involved in this appeal are mostly fact questions. The evidence is such that the jury could have found either way. We find no reversible error.

Affirmed.