HARRY MARTIN v. GUARANTEE RESERVE LIFE INSURANCE COMPANY AND ANOTHER.

155 N. W. (2d) 744.

January 12, 1968—No. 40,764.

130

*Allen & Delaney,* for appellants.

*L. D. Downing* and *O'Brien, Ehrick & Wolf,* for respondent.

NELSON, JUSTICE.

Appeal from an order of the District Court of Olmsted County denying defendants' motion for judgment notwithstanding the verdict or for a new trial.

The case was tried before a jury which returned a verdict for plaintiff, Harry Martin. The order denying defendants' post-trial motion further ordered that the judgment to be entered on the verdict include interest from September 11, 1962.

If all conflicts in the evidence are resolved in favor of the prevailing party below, the facts appear to be as follows: On July 3, 1962, plaintiff was injured in a tractor accident at his farm near Claremont, suffering total disability from that date until at least September 10, 1962. Plaintiff had various policies of accident insurance with defendant companies, all of which had been obtained by mail order. At the time of the accident, there were in force four of such policies with defendant Guarantee Reserve Life Insurance Company, two of which reduced benefits by half when the insured reached 60 years of age. Plaintiff also had four policies in force with defendant National Protective Life Insurance Company. These policies provided for indemnity of $25 per week for total and continuous disability arising from an accident such as described therein, but not in excess of 10 consecutive weeks. As plaintiff insured was 64 years of age on the accident date, the total maximum liability under the four policies of Guarantee Reserve was $750. The total maximum liability of National Protective was, under its four policies, $1,000, making a total of $1,750 under all policies.

The record discloses that on October 16, 1962, at about 8 p. m. plaintiff was contacted at his home by one Richard Ridder, a claims agent representing defendants. Plaintiff was still having pain in his leg and had been given a "hypo" by his wife (a registered nurse) so that he could sleep. Ridder indicated he had come to get information concerning the claim and expressed surprise when plaintiff told him of the number of policies he had purchased. Ridder advised plaintiff that he would have to check with the companies further to learn if that number were in effect and suggested he could "give you a little on each one and then you will hear from us later about the balance." Ridder gave plaintiff one check for $75 and one for $125 and asked plaintiff to sign two forms which plaintiff said were not filled out. The forms, incorporated in the complaint, purport to be releases of any claims plaintiff has against defendants. Plaintiff testified that he understood that these were receipts for the policies which Ridder wished to take to the home office in order to check with the companies. There was no discussion of the total value of the claim, since Ridder said he did not know how many policies were in effect. Plaintiff understood that his claim was around

$2,000 and he denied having any discussion of compromise or settlement with Ridder.

After writing several letters to defendants and receiving no response nor any further payments on his policies, plaintiff commenced this action to set aside the releases and to recover disability benefits under the policies. Plaintiff claims that the insurance policies which he purchased from defendants are in full force and require defendants to make payment to him in the sum of $1,750. He admits that he has received thereon in payment of his claim the sum of $200, but maintains that the balance due on the insurance contracts is the sum of $1,550. He further claims that the releases obtained by defendants were obtained by means of fraud, deceit, and misrepresentation.

Defendants in their answer admitted plaintiff's purchase of the policies but alleged that some of them had lapsed prior to the date of the accident. Defendants admitted that each of the policies in force on that date provided benefits to the insured of $25 per week up to a maximum of 10 consecutive weeks on account of total and continuous disability, but they specifically denied that plaintiff was so disabled for a period in excess of 10 consecutive weeks. They also alleged that two of the policies each provided that benefits payable thereunder are reduced one-half at age 60 of the insured and that such provisions applied to plaintiff.

Defendants also alleged that on October 16, 1962, in consideration of payments made to plaintiff by them on prior claims which were of doubtful validity and in compromise of plaintiff's claim of total disability arising from the injury of July 3, 1962, upon which there was disagreement, and in further consideration of the payment of $75 by Guarantee Reserve and of $125 by National Protective, plaintiff executed and delivered to each defendant written releases wherein and whereby he released and discharged them from all claims or demands arising from the claim asserted in his complaint.

The testimony of plaintiff and of Ridder regarding what transpired between them at the October 16, 1962, meeting is almost diametrically opposed.

Plaintiff testified that Ridder had seemed surprised when plaintiff told him how many policies he had and that he had said that under

the circumstances he would have to give plaintiff a small amount on each and that the balance due would be handled later; that he gave plaintiff the checks for $75 and $125; and that he then asked plaintiff to sign two forms. Plaintiff testified that he did not read the forms; that he thought they were receipts; that the forms were blank; and that Ridder did not fill them out while he was at plaintiff's farm or give plaintiff a copy of the release forms.

Plaintiff also testified that Ridder had mentioned some prior claims that defendants had paid and had said that these amounts might have been too much. Plaintiff said that this conversation did not occur until after the checks were made out and the forms, which later proved to be releases, had been signed.

Ridder testified that before the checks were made out and the releases were signed he and plaintiff discussed plaintiff's prior claims, Ridder indicating that there had been something suspicious about them and that defendant's would like to compromise the July 3, 1962, claim without further investigation. Ridder also testified that he filled out the releases, listing the relevant policies on each release before plaintiff signed them; read the releases to plaintiff; and witnessed plaintiff's signature. He claims that all of this was done in plaintiff's presence and that thereafter he gave plaintiff the two checks and explained to plaintiff that the releases terminated any further obligation on the part of defendants with respect to plaintiff's claim. He also testified that he gave plaintiff copies of the releases.

On this appeal following the verdict for plaintiff, the legal issues appear to be the following:

Is a fair preponderance of the evidence sufficient to sustain a verdict in an action to set aside alleged releases and to recover amounts due under several accident insurance policies?

Were the alleged releases sufficient to avoid the obligations of defendant companies under the accident insurance policies issued herein?

May interest be awarded from time of cessation of disability until the time of the verdict in an action to recover amounts due under the several accident insurance policies in question?

■ In reality, the only issue of consequence is whether the trial

court properly instructed the jury on plaintiff's burden of proof as to the alleged fraud in the inducement of the releases. The court instructed the jury as follows:

"* * * [T]he plaintiff has the burden of proving these claims. In other words, the plaintiff has the duty of proving that he had the sum of $1,750.00 due on these contracts, and that the documents, Plaintiff's Exhibits 2 and 3, were signed as the result of false representation. The plaintiff has the duty of proving that. The plaintiff's burden of proving his claim is one which must be shown by the fair preponderance of the evidence. So that is the plaintiff's claim and that's the plaintiff's burden of proof."

The trial court again restated plaintiff's burden of proof at the end of the instructions, saying "the plaintiff must prove his claim by a fair preponderance of the evidence."

Defendants contend, however, that the court's instruction was incorrect and that plaintiff's burden of proof when attempting to avoid a release on the grounds of fraud is "a fair preponderance of the clear and convincing evidence." We are satisfied that the instructions correctly stated the quantum of proof required.

The general rule is that a release "becomes a 'strong wall of evidence,' not to be lightly overcome by unsatisfactory oral testimony." Cox v. Edwards, 120 Minn. 512, 515, 139 N. W. 1070, 1071. The courts have apparently struggled with the problem of determining what caliber of evidence the asserting party must produce to breach the "wall." They seem to feel that the proof must be more than a mere preponderance, but less than proof beyond a reasonable doubt. See Annotation, 71 A. L. R. (2d) 82, 172, which states:

"Most of the courts have agreed that one attacking a release on the ground that it was induced by fraud or mistake as to the nature and extent of the injuries must establish his contentions by something more than a mere preponderance of the evidence. Although the language used by the courts in stating the degree of proof required has varied, it appears that 'clear and convincing' proof would be accepted by most courts as the test."

The difficulty of applying the "clear and convincing" test is shown by the pattern of Minnesota decisions on what degree of proof is needed to attack written instruments on the basis of fraud. In Schmeisser v. Albinson, 119 Minn. 428, 432, 138 N. W. 775, 776, this court distinguished the degree of proof needed to avoid a written instrument on the ground of fraud from that required to recover damages for fraud, stating:

"The rule is general that in actions to set aside and annul a written instrument on the ground that it was procured by fraud the evidence must be clear and strong. [Citations omitted.] But we think that in actions founded on fraud and deceit, where no formal written instrument is assailed, the rule is established in this state that a fair preponderance of the evidence will warrant a finding in favor of the litigant upon whom is the burden of proof."

This court seemed to alter its view 14 years later in Mandel v. Brooks, 165 Minn. 490, 491, 206 N. W. 727. The suit was brought to rescind a contract on the ground of fraud. The court held:

"We do not think there is any difference in the quantum of proof required in an action to recover damages for misrepresentations as to the subject-matter of a contract and in a suit to rescind the same contract for the same misrepresentations inducing its making. In both a fair preponderance of the evidence justifies relief."

In Spiess v. Brandt, 230 Minn. 246, 257, 41 N. W. (2d) 561, 569, 27 A. L. R. (2d) 1, a case in which the plaintiffs sued to rescind a contract on the ground of fraud, the court held:

"* * * The rule requiring clear and convincing evidence to justify a rescission of a contract for fraud is *merely a rule of caution against setting aside written instruments upon weak and inconclusive evidence.* A fair preponderance of the evidence is sufficient." (Italics supplied.)

In Allison v. Chicago Great Western Ry. Co. 240 Minn. 547, 62 N. W. (2d) 374, fraud was alleged as the ground for avoiding a release of an F.E.L.A. claim. Our court stated that the case was governed by Federal law and required application of the "fair preponderance" rule

in weighing the evidence presented, since that is now the Federal rule. See, Purvis v. Pennsylvania R. Co. (3 Cir.) 198 F. (2d) 631; Camerlin v. New York Cent. R. Co. (1 Cir.) 199 F. (2d) 698, 704.

However, 9 years after the Spiess case, the court in Hafner v. Ritzinger, 256 Minn. 196, 97 N. W. (2d) 839, was presented with a case in which there was a counterclaim for damages for fraud in the inducement of the agreement. The court cited and seemed to reaffirm the holding in Schmeisser v. Albinson, *supra,* stating (256 Minn. 201, 97 N. W. [2d] 843):

"Plaintiff next contends that the quantum of proof required to establish fraudulent representation is something more than a fair preponderance of the evidence. We have held in a number of cases that a fair preponderance is sufficient to establish actionable fraud. The cases relied upon by plaintiff deal with actions to set aside, reform, or annul written contracts. The distinction between the two types of cases is shown in our prior decisions."

In Hafner v. Ritzinger, *supra,* we made two things clear: (1) The parol evidence rule is inapplicable to exclude evidence of fraudulent oral representations by one party which induce another to enter into a written contract; and (2) the essential elements of an action based on fraudulent representations may be established by a fair preponderance of the evidence. It becomes clear from a reading of the decision that Spiess v. Brandt, *supra,* was quoted with approval therein and that this court made no ruling contrary to its holding in the Spiess case that a fair preponderance of the evidence is sufficient to justify rescission of a contract for fraud.

In summary it becomes clear that the pre-Mandel cases did require "clear and convincing" evidence to set aside written instruments on the grounds of fraud, but merely a preponderance of the evidence to prove the same fraud in a suit for damages. While the post-Mandel cases have not always been consistent, most have abandoned the distinction and followed the view that a "fair preponderance of the evidence" justifies relief in either a suit for rescission or one for damages based on fraud in the inducement. We think it also clear that the rule established in

Mandel v. Brooks, *supra,* and the cases subsequent to it has not been disturbed by the decision in Hafner v. Ritzinger, *supra.*

The trial court's instructions in this case correctly set forth the rule of the Spiess case and under all the circumstances were fair to defendants. The issue of fraud is clearly a jury question involving credibility of witnesses and its determination has been reviewed and approved by the trial court, and should not now be disturbed by this court. The cases relied upon by defendants with respect to this issue are not persuasive.

■   In the instant case the liability under the insurance contracts was clear and the amounts owing were conceded. See, Jones v. Fidelity & Cas. Co. 166 Minn. 100, 207 N. W. 179. However, defendant alleged that the claim was disputed because plaintiff had been guilty of fraud in presenting prior claims, an issue which the trial court permitted defendants to attempt to prove to the satisfaction of the jury. The trial court in a memorandum made a part of the order appealed from pointed out that defendants failed in this proof because (1) they had destroyed all their own records and files; (2) the medical doctor and medical records failed to disclose any evidence of fraud; (3) the plaintiff steadfastly denied making any false claim or representation; (4) the insurance adjuster had no firsthand personal knowledge; and (5) no other witnesses or evidence was produced. As characterized by the trial court in its memorandum, defendants' allegations of prior fraud on the part of plaintiff "simply seem to evaporate into thin air."

If the testimony of plaintiff is believed, as it was by the jury, the release forms were not even filled out before plaintiff signed them, and if this be true, they could not be considered valid written documents binding upon plaintiff. The releases then clearly were not sufficient to avoid defendants' liability under the policies.

As this court stated in General Elec. Co. v. O'Connell, 118 Minn. 53, 57, 136 N. W. 404, 406:

"* * * [I]t is well settled that one cannot escape the consequences of his fraud by hiding behind an instrument secured by such fraud. In such cases, the law sweeps away the instrument, and leaves the guilty party to face his accuser."

It was said in Ganley Brothers, Inc. v. Butler Brothers Bldg. Co. 170 Minn. 373, 377, 212 N. W. 602, 603, 56 A. L. R. 1:

"The law should not and does not permit a covenant of immunity to be drawn that will protect a person against his own fraud. Such is not enforceable because of public policy. Industrial & General Trust, Ltd. v. Tod, 180 N. Y. 215, 73 N. E. 7."

■ Defendants' only remaining contention is that plaintiff is not entitled to interest on the amount of the verdict from September 11, 1962, the day following 10 weeks of total disability. The difficulty with defendants' argument is the assumption that $1,550 was not due on that date. The jury's verdict, as well as the trial court's order, is to the contrary. Interest on the amount owing under the terms of an insurance policy is properly allowed from the time when the amount was due in an action against the insurer on the policy. Concordia Ins. Co. v. School Dist. No. 98, 282 U. S. 545, 51 S. Ct. 275, 75 L. ed. 528; Perine v. Grand Lodge, 51 Minn. 224, 53 N. W. 367; 46 C. J. S., Insurance, § 1391.

Any other assignments of error herein deal with trivial matters constituting harmless error, even if a semblance of validity is present. Plaintiff is entitled to an affirmance.

Affirmed.