**John R. SPITZMUELLER**

v.

**BURLINGTON NORTHERN RAILROAD CO.**

**Civ. No. 4–88–1039.**

United States District Court,
D. Minnesota,
Fourth Division.

June 29, 1990.

Phyllis Karasov, John M. Harens, and James A. Bobzien, Moore, Costello & Hart, St. Paul, Minn., for plaintiff.

Thomas J. Knapp and Lawrence M. Stroik, Ft. Worth, Tex., and Thomas W. Spence, St. Paul, Minn., for defendant.

## ORDER

ROSENBAUM, District Judge.

Defendant moves to dismiss this cause, pursuant to Rule 12(b), Federal Rules of Civil Procedure (Fed.R.Civ.P.) or, in the alternative, for summary judgment pursuant to Rule 56, Fed.R.Civ.P. The Court has considered affidavits and documents outside the pleadings and, therefore, treats defendant's motion as one for summary judgment pursuant to Rule 56. Having considered these items and the arguments of counsel, the Court grants defendant's motion for summary judgment.

## Facts

In 1967, several railroads merged to become the Burlington Northern Railroad Company. The merger was approved by the Interstate Commerce Commission (ICC). The ICC, however, imposed specific labor protection benefits (the *Northern Lines* protective conditions, 331 ICC 228 (1967), *aff'd*, 296 F.Supp. 853 (D.D.C.1968), *aff'd sub nom., United States v. ICC*, 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970)) which inured to all employees of the railroads. Among these conditions was a guarantee that certain benefits, calculated at a particular rate, were to be paid to employees affected by any reduction in force at the railroads. 49 U.S.C. § 11347.

Plaintiff was employed by defendant from October, 1953, to October, 1986, when his position was abolished. From 1965 on, plaintiff held non-union, exempt positions. When his position was abolished, plaintiff was given three options: (1) to exercise seniority and obtain a new position pursuant to a collective bargaining agreement with defendant; (2) remain an exempt employee without job duties and with a reduced compensation equivalent to plaintiff's benefit guarantees under the *Northern Lines* protective conditions; or (3) enter into a settlement and release with defendant. It is plaintiff's claim that officers of defendant advised him the third option would be most beneficial, that he relied heavily on those representations, and that he has been injured thereby.

Initially, following the abolishment of his position, plaintiff apparently began receiving benefits as computed pursuant to the *Northern Lines* merger (option two of defendant's proposals). Defendant also sent a proposed settlement and release form to plaintiff for his consideration (pursuant to option three of defendant's proposals).

Plaintiff admits that he hired an attorney to assist him in considering the prospective agreement and release. He contends, however, that he hired the attorney solely "for the express purpose of confirming the written terms of the agreement BN had proposed to me ... [such as] clarifying with BN questions regarding the receipt of ben-

efits, deductions to be taken for Railroad Retirement, and the timing and amount of the severance payment." Plaintiff's affidavit, ¶ 24. In his affidavit plaintiff states he "did not retain [the attorney] to negotiate on my behalf or advise me regarding any aspect of the other options presented to me by BN." *Id.*

Plaintiff agreed to sign the settlement and release agreement. He did so after further negotiations concerning the terms of the agreement. Pursuant to the agreement, plaintiff was paid $78,350.22 plus reimbursements originally taken as deductions pursuant to the Rail Passenger Service Act, 45 U.S.C. § 565. Plaintiff also negotiated the payment of his attorney's fees. By its terms the final settlement released defendant from all claims relating to plaintiffs' employment and retirement.

In August, 1985, another exempt employee of defendant—Mr. George W. Landis— brought suit in the United States District Court for the Western District of Washington challenging defendant's interpretation of the protective conditions. Mr. Landis alleged defendant's interpretation breached the 1967 merger agreement. The district court referred the issue to the ICC.

In December, 1986, the ICC concluded defendant misinterpreted the protective conditions and applied an incorrect formula for determining guaranteed benefits. The ICC's decision is generally referred to as *Landis I.*[1] Roughly one and a half years later, in April, 1988, the ICC promulgated the correct measure for determining the guarantees. This latter decision is known as *Landis II.*[2]

Following *Landis I,* defendant sent a copy of the ICC's decision to all exempt employees, including plaintiff. Plaintiff received the decision in February, 1987, prior to the date he cashed his release consideration check. Plaintiff acknowledges cashing his Railroad Retirement Act reimbursement following this first notice.

Defendant also sent a notice of the *Landis II* decision to all exempt employees. Defendant alleges plaintiff continued to accept the benefits of the settlement and release agreement after the *Landis II* decision was handed down and distributed.

Plaintiff brings this action seeking to rescind the release he signed in December, 1986. He claims he would not have entered into the settlement had he known of the *Landis* litigation. He alleges in Counts I and II that defendant has breached the ICC's *Northern Lines* merger regulations and protective conditions and 49 U.S.C. § 11347. Plaintiff further alleges in Count III that defendant has breached the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* In particular, plaintiff contends defendant has breached sections 1140 and 1141 of Title 29. In Count IV, plaintiff contends the release is invalid because defendant misled him by failing to apprise him of the *Landis* litigation—which had not yet been decided by the ICC—during the negotiation of the release. In Counts V and VI, plaintiff alternatively alleges the release is invalid because it was made under a unilateral mistake or a mutual mistake. As in Count IV, plaintiff alleges the release is unenforceable since defendant knew of the pendency of the *Landis* case and he did not.

Defendant responds by arguing the release is valid and plaintiff's claims are, therefore, barred. In particular, defendant notes the release is supported by consideration and was signed by plaintiff with full knowledge of its ramifications. In the alternative, defendant suggests plaintiff's claims in Counts I and II should be referred to the ICC for determination prior to consideration of Counts III through VI.[3]

*Analysis*

I. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material

---

1. Finance Docket No. 21478 (Sub–No. 6) (November 25, 1986).

2. Finance Docket No. 21478 (Sub–No. 6) (March 16, 1988). The *Landis I* and *Landis II* decisions were affirmed by the District Court for the

Western District of Washington. *Landis v. Burlington Northern R. Co.,* No. 85–1670, mem. op. at 1–2 (W.D.Wash.1989).

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure (Fed.R. Civ.P.). Summary judgment may be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The opposing party must produce concrete facts demonstrating the issue for trial. *Buford v. Tremayne,* 747 F.2d 445, 447 (8th Cir.1984).

## II. Choice of Law

The settlement and release signed by plaintiff includes a choice of law clause providing that Texas law govern any dispute over the release terms. Plaintiff suggests the choice of law clause is unenforceable and Minnesota law governs this dispute. Defendant disagrees, but notes in its reply brief that Minnesota and Texas law generate the same outcome. Absent serious objection from defendant, the Court need not resolve any conflict of laws question which may otherwise be presented. For purposes of this motion, the Court accepts plaintiff's argument and applies Minnesota law.

## III. ICC Priority

■ Defendant suggests referring Counts I and II to the ICC. Since those counts allege violations of the *Northern Lines* merger agreement, the ICC appears to be the proper administrative body to consider plaintiff's allegations under the doctrine of primary jurisdiction. *See Morgan v. St. Joseph Terminal Railroad Co.,* 815 F.2d 1232, 1235 (8th Cir), *cert. denied,* 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 98 (1987).

The ICC is clearly the entity to determine, in the first instance, whether a *Northern Lines* violation has occurred, particularly when a complaint raises issues such as compliance with pre-merger protec-

tive agreements, ICC merger approval orders, and the statutory mandate for fair and equitable arrangements to protect the interests of employees affected by a merger. *Anderson v. United Transportation Union,* 557 F.2d 165, 169 (8th Cir.1977). In particular, "the doctrine should be exercised if the issues in the proceeding 'turn on a determination of the reasonableness of a challenged practice,' or raise a 'question of the validity of a ... practice.'" *Maislin v. Primary Steel, Inc.,* 879 F.2d 400, 403 (8th Cir.1989) (*quoting Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 304–06, 96 S.Ct. 1978, 1987–88, 48 L.Ed.2d 643 (1976)). Even though a private cause of action may exist for the enforcement of the ICC order, the doctrine provides that the ICC retains initial jurisdiction. *Engelhardt v. Consolidated Rail Corp.,* 594 F.Supp. 1157, 1164 (N.D.N.Y.1984), *aff'd,* 756 F.2d 1368, 1369 (2d Cir.1985).

Were plaintiff's claims before the Court absent the issue created by his release, this Court would feel bound to address these matters to the ICC. Plaintiff's first two counts turn on the merger agreement and the ICC's interpretation in a fashion which is facially similar to Mr. Landis. Yet, the claims also relate to the release agreement signed by the plaintiff. Before the Court may pass the issue to the ICC for consideration of whether any violation of the ICC merger order has occurred, the Court must first determine if plaintiff has surrendered any such right to pursue these claims by way of the release agreement. Simply put, this Court must initially consider whether plaintiff has waived claims which may otherwise be properly certified to the ICC.

## IV. Validity of Release Agreement

■ Minnesota release law is well established. Courts encourage settlements of disputes and releases, therefore, are generally presumed valid. *Carlock v. Pillsbury Co.,* 719 F.Supp. 791, 857 (D.Minn.1989); *Jeffries v. Gillitzer,* 302 Minn. 402, 225 N.W.2d 17, 20 (1975). In effect, a release acts as a defense to any

action on the claims released.[4] *See Couillard v. Charles T. Miller Hospital, Inc.,* 253 Minn. 418, 92 N.W.2d 96, 99 (1958). Consequently, an enforceable release may bar claims premised on statutory provisions.[5] *See Lancaster v. Buerkle Buick Honda Co.,* 809 F.2d 539, 540 (8th Cir.), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987).

■ In assessing the validity of a release, a court must look to standard contract principles. *See Lancaster,* 809 F.2d at 541. As such, a release must be supported by adequate consideration. *Carlock,* 719 F.Supp. at 857. Additionally, a court may consider:

> 1) the presence or absence of legal counsel of plaintiff's choice before and at the time of settlement, 2) the language of the release itself and whether the plaintiff was permitted to change the language in the release, 3) evidence of inequitable conduct by the defendant in obtaining the release, 4) the presence or absence of fraud or misrepresentation in obtaining the release, 5) the existence of economic coercion in obtaining the release, and 6) evidence that the release is against public policy.

*Schmitt–Norton Ford, Inc. v. Ford Motor Co.,* 524 F.Supp. 1099, 1102–03 (D.Minn. 1981), *aff'd,* 685 F.2d 438 (8th Cir.1982) (citations omitted).

Plaintiff urges the nullification of his release. He does not, however, assert inadequate consideration or economic coercion. Rather, plaintiff focuses on the failure of defendant to inform him of the pending *Landis* litigation. Plaintiff's suit rests upon the alternative theories of unilateral mistake, misrepresentation, and mutual mistake. The Court addresses these theories individually, keeping in mind the factors set forth in *Schmitt–Norton Ford.*

### A. Unilateral Mistake

■ Unilateral mistake is not a ground for invalidating a release unless the defendant wrongfully concealed facts from the plaintiff or induced the mistake in some other manner. *Schmitt–Norton Ford,* 524 F.Supp. at 1104; *see Jacobs v. Farmland Mutual Ins. Co.,* 377 N.W.2d 441, 444 (Minn.1985). In this case, plaintiff claims defendant misrepresented its position by failing to advise plaintiff of the *Landis* matter. The merits of this position are discussed below and the Court need not consider the issue of unilateral mistake further.

### B. Misrepresentation

■ An actionable misrepresentation requires either that the defendant acted dishonestly or in bad faith (with fraudulent intent) or, alternatively, that the defendant was negligent. *Florenzano v. Olson,* 387 N.W.2d 168, 173 (Minn.1986). Plaintiff does not allege negligent misrepresentation, so this Court need only concern itself with intentional fraud or concealment. The elements of fraudulent misrepresentation are well established in Minnesota law:

1. There must be a representation;
2. the representation must be false;
3. it must have to do with a past or present fact;
4. the fact must be material;
5. the fact must be susceptible of knowledge;
6. the representor must know the fact is false or assert it as of his own knowledge;
7. the representor must intend to have the other person induced to act, or justified in acting upon it;
8. that person must be so induced to act or justified in acting;
9. the person's actions must be in reliance upon the representation;

---

**4.** A release, however, need not be particularly specific. A broad release may encompass numerous claims contemplated by the parties' agreement. *See Lancaster v. Buerkle Buick Honda Co.,* 809 F.2d 539, 540–41 (8th Cir.), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987).

**5.** A properly executed release, for example, may preclude a claim based upon ERISA. *Lancaster,* 809 F.2d at 540.

10. the person must suffer damage;

11. the damage must be attributable to the misrepresentation; that is, the misrepresentation must be the proximate cause of the injury.

*Western Contracting Corp. v. Dow Chemical Co.,* 664 F.2d 1097, 1100–01 (8th Cir. 1981); *Davis v. Re–Trac Mfg. Corp.,* 276 Minn. 116, 149 N.W.2d 37, 38–39 (1967). Concealment of a material fact may also constitute fraud. *See e.g. Peterson v. Arellono,* 289 Minn. 541, 185 N.W.2d 282, 284 (1971). In any case, a plaintiff seeking to rescind a contract must prove by a preponderance of the evidence that the misrepresentation elements have been met. *Martin v. Guarantee Reserve Life Ins. Co.,* 279 Minn. 129, 155 N.W.2d 744, 747 (1968). Releases, in particular, may be avoided if fraud or misrepresentation exists, but the fraud or misrepresentation must touch upon the execution of the release. *Schmitt–Norton Ford,* 524 F.Supp. at 1103.

▮▮▮▮ Plaintiff contends defendant misrepresented his full rights pursuant to the settlement by failing to disclose the pendency of the *Landis* matter which was under consideration by the ICC at the time plaintiff signed his release. It is plaintiff's claim that defendant's failure to advise him of the *Landis* claims must be considered under the law of misrepresentation. He does not claim that a direct false statement was made.[6] Plaintiff's entire claim rests upon the propriety of defendant's alleged concealment of the *Landis* matter.

It is certain that a pending legal claim, such as the *Landis* litigation, may be susceptible to a number of outcomes, some advantageous and some adverse to a party such as this defendant. But which outcome was likely to occur could not have been more than rank conjecture. At the time defendant allegedly advised plaintiff that it was in his interest to take the settle-ment, such advice was accurate under the agreements and their interpretations then in effect. The settlement was more beneficial to him than the guarantee benefits. As such, defendant did not misrepresent an existing fact.

The Court has found neither case nor statutory law in Minnesota supporting the novel proposition that defendant is liable for failing to disclose pending or ongoing litigation. Assuming, and the Court does not so hold, such a rule to be in effect, the result would only be that defendant would have been required to advise plaintiff of the existence of litigation—the outcome of both *Landis* cases was not known until months after plaintiff signed his release. This would simply open more avenues for conjecture: are the cases really analogous? What is the chance of success? If the other case is decided adversely to the plaintiff, is the outcome "slightly" adverse or "significantly" adverse? Is the present benefit more advantageous than the hoped for outcome? Such musings make clear the emptiness of plaintiffs' proposed rule. And they make clear why the Court declines to adopt it. The delays which such disclosure could create for defendant, particularly a large corporation involved in multiple cases, might certainly work a hardship if the pending cases were lengthy.

In this matter, moreover, there is some serious question as to whether plaintiff would have chosen a different avenue had *Landis* been revealed earlier. The facts presented make clear that plaintiff knew of the decision in *Landis I* very shortly after it was decided. Although the correct computation was not issued until April, 1988, plaintiff took absolutely no action between *Landis I* and *Landis II* to attempt to resolve or renegotiate the release. In fact, plaintiff was able to enjoy the security of his settlement in between the two decisions, and only displayed unhappiness upon

---

**6.** Neither misrepresentations of the law, *Midland National Bank of Minneapolis v. Perranoski,* 299 N.W.2d 404, 411–12 (Minn.1980); *Northernaire Productions, Inc. v. County of Crow Wing,* 309 Minn. 386, 244 N.W.2d 279, 281 (1976), nor opinions are actionable. *Midland National Bank,* 299 N.W.2d at 412; *Fischer v.* *Division West Chinchilla Ranch,* 310 F.Supp. 424, 428 (D.Minn.1970). A representation or expectation as to future events is not a basis under Minnesota law to support an action for fraud merely because the act did not take place. *RJM Sales & Marketing Inc. v. Banfi Products Corp.,* 546 F.Supp. 1368, 1377 (D.Minn.1982).

learning what amounts he might have received pursuant to *Landis II* had he made a different decision. Defendant's argument here is persuasive: this lawsuit would probably be non-existent had *Landis I* been decided differently.

Other factors weigh heavily against plaintiff's position. The language of the release, for example, is clear and unambiguous. *See Lancaster,* 809 F.2d at 541. The release language is brief and is not hidden in fine print. *See id.* Plaintiff, furthermore, negotiated portions of the release through his own chosen attorney who was able to garner additional sums not originally contemplated by the agreement. *See id.* Plaintiff's suggestion that his lawyer served a limited purpose is unpersuasive—the undisputed facts make clear the attorney was engaged in assessing and securing plaintiff's rights and obligations pursuant to the release. The *Landis* litigation was public record, accessible to plaintiff and his lawyer, and had been proceeding since 1985—at least a year prior to plaintiff's release. He made no inquiry, nor did he advance the *Landis* theories on his own.

Plaintiff's lawyer clearly discussed the release with defendant and advised plaintiff of its ramifications. *See Schmitt–Norton Ford,* 524 F.Supp. at 1103–04. Even if plaintiff's attorney had not fully advised him, there is at least some obligation incumbent upon plaintiff to investigate his own position to some extent. *Lancaster,* 809 F.2d at 541. Plaintiff makes no showing that defendant actively concealed the *Landis* litigation or that he lacked the means of discovering and investigating *Landis* himself.

 Plaintiff conceives that the defendant had a fiduciary duty to disclose the *Landis* case. He suggests this duty arises out of the statutory provisions mandating "fair and equitable arrangements to protect the interests of employees." 45 U.S.C. § 565(a); 49 U.S.C. § 11347. The Court does not agree.

Nothing in the language of the statutes cited by plaintiff indicates that such a fiduciary duty is present. Rather, the duty imposed upon an employer is statutorily defined and its scope determined by interpretations of the provisions. Although the relationship is special—the employer must establish "fair and equitable arrangements to protect" the employee's interests—it is special only in terms of the compensation arrangements created pursuant to the statute. The ICC is empowered to review whether the arrangements established meet the statutory requirements. The statutes do not, on their face, create a fiduciary duty between employer and employee which would extend to basic negotiations of a release agreement.

 Nor does the Court find that there is a common law fiduciary duty in this particular case. Generally, the existence of a fiduciary is a question of fact.[7] *Murphy v. Country House, Inc.,* 307 Minn. 344, 240 N.W.2d 507, 512 (1976). The duty arises out of the relationship between the parties. *McGinn v. Merrill Lynch, Pierce, Fenner & Smith,* 736 F.2d 1254, 1258 (8th Cir.1984).

> A fiduciary relationship exists when confidence is reposed on one side and there is resulting superiority on the other; and the relation and duties in it need not be legal but may be moral, social, domestic, or merely personal.

*Stark v. Equitable Life Assurance Society,* 205 Minn. 138, 285 N.W. 466, 470 (1939) (citations omitted); *see Midland National Bank of Minneapolis v. Perranoski,* 299 N.W.2d 404, 413 (Minn.1980). A fiduciary's duty must be defined with reference to the experience and intelligence of the person to whom the duty is owed. *Id.* at 413. The existence of a fiduciary duty would require revelation of facts which would otherwise not need to be disclosed. *Klein v. First Edina National Bank,* 293 Minn. 418, 196 N.W.2d 619, 622 (1972). A fiduciary may be liable for fraudulent misrepresentation if he is silent, even if no actual misrepre-

---

7. This does not foreclose the Court from granting summary judgment. *Minnesota Timber Producers Associations, Inc. v. American Mut. Ins.* *Co. of Boston,* 766 F.2d 1261, 1267 (8th Cir. 1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 778 (1986).

sentation occurs. *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn.1985).

Plaintiff brings forth no facts to demonstrate a fiduciary duty to disclose the *Landis* case existed here. The only facts plaintiff adduces are those which might implicate a duty pursuant to the statute. The requisite elements of a common law duty are missing. The undisputed evidence shows that this was an arm's length negotiation and agreement to determine plaintiff's benefits upon abolition of his position. *See Minnesota Timber Producers, Inc. v. American Mut. Ins. Co. of Boston*, 766 F.2d 1261, 1267 (8th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 778 (1986).

*Landis* represented a claim by one person, which claim was unresolved. Counterposed to this fact, the Court notes defendant agreed to compensate plaintiff beyond the originally proposed settlement, and paid his attorney's fees. The undisputed process of negotiating this settlement and release evinces no creation of a fiduciary duty compelling a new affirmative requirement of disclosure of public lawsuits. On the facts presented, the Court cannot conclude that defendant held an unfair advantage regarding knowledge of the *Landis* case. Plaintiff's employment of an attorney mitigates any problems of disparate legal or business experience. *Toombs*, 361 N.W.2d at 809. Nor can the Court discern any invitation of confidence by plaintiff or an intent to create a fiduciary relationship. Plaintiff's basic allegation that he trusted defendant does not establish a fiduciary duty.[8] *Minnesota Timber Producers, Inc.*, 766 F.2d at 1268.

■■■ Plaintiff further argues the release is unenforceable because it violates public policy. In support of his position, plaintiff cites the Minnesota Human Rights Act, Minnesota Statutes, § 363.031, which provides in relevant part:

Subdivision 1. Prospective waiver prohibited. Any provision, whether oral or written, of a lease, contract, or other agreement or instrument, which purports to be a waiver by an individual of any right or remedy provided in this chapter is contrary to public policy and void if the waiver or release purports to waive claims arising out of acts or practices which occur after the execution of the waiver or release.

Subd. 2. Recision [sic] of waiver. A waiver or release of rights or remedies secured by this chapter which purports to apply to claims arising out of acts or practices prior to, or concurrent with, the execution of the waiver or release may be rescinded within 15 calendar days of its execution.... A waiving or releasing party shall be informed in writing of the right to rescind the waiver or release....

Minnesota Statutes, § 363.031. Plaintiff contends he should have been given the right to rescind the release pursuant to the Act. He further suggests this guaranteed rescission opportunity should be available no matter what type of actions are waived in the release.

The Court disagrees. The statutory language clearly applies only to claims arising under "this Chapter"—that is, the Minnesota Human Rights Act. In other words, only claims arising pursuant to the Act must be released with the rescission language. There is nothing in the Minnesota Human Rights Act which would support such a broad reading.

To the contrary, the securing of releases is often favored in order to facilitate settlement of business relationships. Indeed, their validity is presumed. This Court will not find releases to be agreements which violate public policy.

### C. Mutual Mistake

■■■ Plaintiff's final argument is grounded upon mutual mistake. Plaintiff argues that both parties entered into the release under the mistaken belief that defendant's interpretation of the guaranteed

---

**8.** Plaintiff contends he looked solely to defendant to secure his appropriate rights and benefits. The significance of this assertion is undercut to an extent by plaintiff's hiring of an attorney to check the propriety of the release. *See Klein v. First Edina National Bank*, 293 Minn. 418, 196 N.W.2d 619, 623 (1972).

benefits was correct. Plaintiff suggests that since *Landis I* held the interpretation incorrect, the release should be nullified.

A mutual mistake is a ground for invalidating a release. *Sorenson,* 353 N.W.2d at 670. The Minnesota Supreme Court has accepted the following situation in which rescission is possible:

> There are many cases in which one or both of the parties did not consciously assume the risk as to one or more of the subsidiary factors. One or both may assent to the contract on the assumption that this factor is definitely established and that there is no risk. If this assumption is mistaken ... the contract [is] voidable by the party who is harmed by the mistake.

*Gartner v. Eikill,* 319 N.W.2d 397, 399 (Minn.1982) (*quoting* 3 A. Corbin, *Corbin on Contracts* § 605 (rev. ed. 1960)).

Plaintiff's mutual mistake argument differs subtly from his unilateral mistake and misrepresentation arguments. When dealing with unilateral mistake and misrepresentation, plaintiff suggests the basic problem was his lack of knowledge of the *Landis* litigation. Here plaintiff claims neither side was correct in interpreting the amount of guaranteed benefits.

On the facts presented, plaintiff's argument fails to withstand defendant's motion for summary judgment. The Minnesota Supreme Court has noted:

> If there is to be avoidance of a release on the ground of mistake, it must be based upon a finding of unknown injuries that were *in existence* and not within the contemplation of the parties when the settlement was agreed upon.

*Schmidt v. Smith,* 299 Minn. 103, 216 N.W.2d 669, 672 (1974) (emphasis added). At the time this release was signed, both sides agreed on the interpretation of the amount of guaranteed benefits. The *Landis* case had not been concluded, perforce the understood interpretation was not invalid. Had *Landis* been decided, the parties might well have mutually mistaken the nature of the interpretation.[9] The facts

presented, however, do not create a triable question of fact on the issue of mutual mistake.

Having considered plaintiff's arguments, the Court concludes he has set forth insufficient facts to create a genuine issue for trial. Accordingly, IT IS ORDERED that:

Defendant's motion for summary judgment is granted.

---

9. As noted, a mistake of law is not normally grounds for setting aside a release. *Midland National Bank of Minneapolis,* 299 N.W.2d at 411–12.