WILLIAM OXFORD *vs.* NICHOLS & SHEPHERD CO.

Argued by respondent, submitted on brief by appellant, April 24, 1894. Reversed May 8, 1894.

No. 8692.

**Verdict not supported by the evidence.**

Evidence *held* insufficient to justify a finding that the execution of an instrument was procured by fraud. CANTY, J., dissenting.

Appeal by defendant, Nichols & Shepard Co., a corporation, from a judgment of the District Court of Nobles County, *P. E. Brown*, J., entered March 3, 1893.

EXHIBIT D.

Worthington, Minn., October 11, 1890.

Nichols & Shepard Co., Battle Creek, Mich: Please ship for the undersigned in care of Azom Forbes, Worthington, Minn. at once one of your improved No. 21 Steam Outfits consisting of No. 6 Separator and a ten horse wood and coal burning steam engine mounted on wheels, with 150 feet rubber belt. The undersigned agrees to receive said machinery on its arrival subject to all the conditions of the warranty and agreement printed below, and pay in cash the freight and charges thereon from the factory and also agrees to pay the further sum of $1,625 in notes bearing interest as follows: $200 due Dec. 1, 1890; $500 due Dec. 1, 1891; $500 due Dec. 1, 1892; $425 due Dec. 1, 1893. The undersigned agrees to fully settle for the machinery before it is delivered to him by paying freight and giving said notes and a mortgage on said machinery, and also on two mules, two horses, three colts coming two years old, and second mortgage on four other work horses. This machinery is ordered subject to the following warranty and agreement, and none other; viz: That the separator is well made, and of good materials, and with good management is capable of doing a good business in threshing, separating and cleaning grains and seeds. That the engine is well made and of good materials, and if properly run and rightly managed is capable of driving said separator to do a good business in threshing. Conditioned that upon starting this machinery the undersigned purchaser shall intelligently follow the printed hints, rules and directions. If by so doing he is unable to make it operate well, written notice wherein it fails to satisfy the warranty, is to be immediately given to Nichols & Shepard Co. at Battle Creek, Mich., and also to the dealer through whom purchased, and reasonable time allowed to get to it and remedy the defect (if any) unless it is of such a nature that they can advise by letter, and the purchaser hereby agrees to render necessary and friendly assistance.

Deficiencies in general adaption of the engine for developing the rated power, and of the separator for threshing, separating and cleaning, are expressly agreed by the undersigned to be reported in writing, as above stated within five days after starting it and not after continued use or injury to the machinery, and it is hereby expressly agreed that use without such written notice is conclusive evidence of satisfaction and fulfillment of all warranty.

If any part of said machinery except belting fails during this year in consequence of any defect in material of said part, Nichols & Shepard Co. have the option to repair the same or to furnish a duplicate of said part free of charge except freight, after presentation of the defective piece to the dealer through whom the machinery was bought, but deficiencies in any pieces not to condemn other parts.

On October 11, 1890, plaintiff, William Oxford, executed and delivered the foregoing order, Exhibit D., to Azom Forbes, the agent of defendant. The threshing outfit arrived and was delivered by Forbes to plaintiff on October 22, 1890, and on that day plaintiff made and delivered the notes and chattel mortgage mentioned in the order. He failed to make the threshing outfit work satisfactorily and notified defendant and it sent agents and experts from time to time to remedy defects but failed to do so. But plaintiff kept the outfit until September, 1891, when he delivered it back to the agent, Forbes, and demanded his notes. A few days thereafter the defendant sent out and took the horses, mules and colts under the mortgage and was about to sell them at public auction pursuant to a power in the mortgage when Oxford commenced this action of replevin and had the property redelivered to him. He claimed that Forbes as agent of defendant orally warranted the threshing outfit to be well made and of good material and that it would do good work, threshing all kinds and conditions of grain, flax and timothy seed, and do as good work as any steam outfit in the market and was safe to use on a farm. If it failed the defendant would on notice remedy any defect and if it could not be made to work to his satisfaction, the defendant would take it back and return the notes. He further claimed that he never received any written or printed warranty and did not know that a warranty was in the order he gave, that he was induced by deceit and fraud to sign the order without reading it. Defendant answered and the issues were tried and verdict rendered for the plaintiff. A motion for a new trial was denied and judgment was entered that plaintiff, William Oxford, is the owner and entitled to the possession of the chattels replevied and that he recover $68.33 costs. Defendant appeals. The discussion here was upon the evidence whether or not it was sufficient to sustain the verdict.

*George W. Somerville* and *J. A. Town,* for appellant.

*George W. Wilson,* for respondent.

GILFILLAN, C. J. There was no evidence that would justify a finding of a contract between the parties subsequent to the written contract. It could not be claimed that, with Exhibit D in force,

there would be any basis for the action. All prior and contemporaneous negotiations and parol agreements on the matters covered by that contract were of course merged in it. Unless, therefore, the plaintiff claims that his signature to that contract was fraudulently obtained, his action must fail.

On that point we do not think there was evidence sufficient to make it a question for the jury. There is nothing on the point but the testimony of plaintiff, and, to state that most strongly in his favor, there had been a prior oral agreement for a warranty more favorable to him than that in Exhibt D. That exhibit was made up by filling with a pen blanks in a printed form containing the order for the machine and the warranty, the latter being in somewhat smaller type than the former, though not so small as to be difficult to read, and it was the last thing before, and immediately over, the place for the plaintiff's signature. After it was filled up, plaintiff went into the office of defendant's agent to sign it. It was getting to be dark, and there was no lamp lighted, though he does not state the hour. Another witness says 5 o'clock, October 11th. Plaintiff picked up the paper, and held it in his hands as though reading it, when one Ramage, who appears to have been a clerk of defendant's agent, said to him that it was only the order for the machine; when plaintiff, without reading it, laid it down on the table, and signed it.

To make out a case of fraud, it must appear that Ramage said to plaintiff that the paper was only the order for the machine, with the fraudulent intent to induce him to sign the paper without knowing its contents. Under the circumstances, a jury would not be justified in concluding there was such fraudulent intent. The paper was just what Ramage said,—an order for the machine, containing conditions upon which it was to be delivered and received. If, as said in *McCall* v. *Bushnell*, 41 Minn. 37, (42 N. W. 545,) "the instrument itself, knowingly executed, becomes a strong 'wall of evidence,' not to be lightly overcome by unsatisfactory oral testimony," a verdict against the instrument on such evidence as the foregoing cannot be sustained.

Judgment reversed.

BUCK, J., absent, sick, took no part.

CANTY, J. I dissent from the foregoing opinion, and am of the opinion that there is sufficient evidence to sustain the verdict. Plaintiff purchased from defendant a threshing machine and engine. His testimony is that the contract was oral, and included a warranty and a right to return the machine if it failed to do good work; and, after notice, the defendant failed to make it do good work. He mortgaged other personal property as security for the purchase price. He and the defendant both failed to make the machine do good work, and he returned it. The defendant then took possession of the mortgaged property under the mortgage, and plaintiff brought replevin.

Upon the trial defendant produced a written order for the machine, following which, on the same paper, and printed in small type, is a contract of purchase of the machine, reciting the warranty the purchaser received with it, which is wholly different from the oral warranty which he claims, and contains no clause giving him the right, after trial, to return the machine.

In impeachment of this instrument, plaintiff testified that in the office of the agent, late one evening, the clerk of the agent filled out a paper; that it was quite dark; there was no light in the room, and he could not see to read when the paper was given him. That he took up the paper to read it, and the clerk told him it was nothing but an order for the machine. Again, he says: "He seemed to be in a hurry, and he spoke; he said it was about time to go home, and he says, 'It is nothing but an order for the machine.'" "I had it only while it was lying on the desk. I picked it up in my hand, and he told me what it was, and I just put it down and signed it. I could hardly see to write in there. Q. Why didn't you read it? A. Because it was quite late in the evening, and Ramage said what it was."

The witness also testified that some time after he signed this order, and when the machine arrived, in a conversation with the agent "I asked him for a warranty, and they told me they would send me one; when they sent these papers to Fulda, they would send one with it in the letter." "I asked him for a warranty, and he said that they had no printed one, but would send me one in the letter, and the warranty was to be the same as he had stated

before; it should do good work in all kinds of grain, or I could return it."

It seems to me the evidence was sufficient to go to the jury to impeach the written instrument for fraud. When the parties stand on an equal footing, and the party claiming fraud is able to read, and no artifice is used to prevent him from reading the instrument he is about to sign, his own negligence in failing to read it is the substantial cause of his injury. But each case must stand on its own peculiar circumstances where there are such circumstances in the case. Where some artifice is fraudulently used to prevent his reading the instrument, and there is also a difficulty in the way of his reading it, as that it is too dark to see to read it at the time and place, and the objectionable matter is in fine print, and, as in this case, where he alone was to sign the instrument, and this objectionable matter was a provision which he might naturally expect should be signed by the opposite party, and not by him, it seems to me that his negligence and defendant's fraud were both questions for the jury.

Fraud must be proved by circumstantial evidence. The fraudulent intent is usually a mere inference. It is a question for the jury whether the clerk, Ramage, said what he did when plaintiff picked up the instrument to read it, for the fraudulent purpose of preventing him from reading it, and whether Ramage took advantage of the darkness and the fine print to aid him in accomplishing his purpose, and also took advantage of the fact that plaintiff might naturally suppose that the warranty from the defendant to him should be signed by the defendant, and not by him. While the evidence is certainly not very strong as a question of law, it is sufficient to sustain the verdict. In my opinion, the order appealed from should be affirmed.

(Opinion published 58 N. W. 865.)