CHARLES H. DART v. MINNESOTA LOAN & TRUST COMPANY and Another.

December 5, 1898.

Nos. 11,269—(106).

Foreclosure of Mortgage—Injunction—Payment of Consideration—Finding not Sustained by Evidence.

Held, that a finding of the trial court and jury, to the effect that the appellant did not pay to the respondent's assignee the consideration of a mortgage on his farm, made by him to it, is not sustained by the evidence.

Action in the district court for Meeker county to restrain the foreclosure of a mortgage. The case was tried before Power, J., and a jury, which returned a special verdict, and judgment was ordered in favor of plaintiff against defendant loan and trust company, for $1,400, and interest. From an order denying a new trial, defendant trust company appealed. Reversed.

W. J. Hahn and J. M. Martin, for appellant.

John T. Byrnes, for respondent.

START, C. J.

This action, so far as it affects the appellant, the Minnesota Loan & Trust Company, is for the recovery of $1,400 and interest, being the amount of a mortgage made by Ole Olson and wife on his farm to the trust company on July 1, 1889, on the ground that there was no consideration therefor. The mortgagor, Ole Olson, executed the mortgage to the trust company to secure a loan to him of $1,400, which it agreed to make. It accepted the mortgage, and thereafter

sold and assigned it for value to its codefendant, the Westerly Savings Bank. The mortgagor claimed that the trust company never paid to him, or to any one for him, any part of the loan, and assigned all his rights in the premises to the respondent, Dart, who had become the owner of the farm. The trust company alleged in its answer that it paid to the mortgagor the full amount of the $1,400 so loaned to him. The trial court submitted the question of such payment to the jury, who found that the trust company did not pay the $1,400, or any part thereof, to the mortgagor.

The court made findings of fact as to the other issues in the case, and incorporated therein the finding of the jury on the question of payment, and as a conclusion of law directed judgment in favor of the plaintiff for $1,400 and interest from the time of the delivery of the mortgage.

The trust company appealed from an order denying its motion for a new trial.

The contention of the trust company is that the finding as to the nonpayment of the $1,400 is not sustained by the evidence. Much of the evidence on this question is undisputed, and, except as specially stated, there is no dispute as to the following facts: On July 1, 1889, Messrs. Stevens & Co., a copartnership consisting of Hamlet Stevens and H. S. Branham, were bankers in good financial standing at Litchfield. Ole Olson, the plaintiff's assignor, was then the owner of the farm described in the complaint, and was then owing one of the firm—H. S. Branham—$800 and interest for a tree claim on the land, and $157.97 and interest to the Meeker County Bank.

The trust company was then engaged in the business of making farm loans, and Stevens & Co. were its agents for that purpose at Litchfield, and Olson applied through them for a loan of $1,400, to be secured on his farm, for the purpose of paying his debts. He executed a note and mortgage on his farm to the trust company to secure it for that amount, which were forwarded by Stevens & Co. to the trust company at its place of business at Minneapolis. Accompanying this was an order designated in the record as "Exhibit 2," signed by Olson, which was in these words:

"$1,400.                    Litchfield, Minn., July 8th, 1889.
Upon completion of my loan and the receipt of all papers required in connection therewith by you, pay the sum of fourteen hundred dollars, which sum I acknowledge to be the full amount due me from you to close said loan, to the order of Stevens & Co., of Litchfield, Minn., whom I hereby appoint my agent to receive for me said sum, and whose indorsement on this draft shall be full receipt to you from me, and shall discharge you from all liability to me on account of said loan.                          Ole Olson."

The trust company, after the receipt of this order, paid to Stevens & Co., on their order, $1,400, the full amount for which the mortgage was given. It offered evidence on the trial tending to show that it relied upon Exhibit 2, and that, except for it, payment would not have been made to Stevens & Co. The evidence was excluded, and the trust company excepted. The ruling was error, and, for the purpose of determining the question now under consideration, it must be assumed as a fact that the trust company did make the payment in reliance on Exhibit 2.

After the money was received by Stevens & Co., they paid therefrom for insurance on the mortgaged premises $13.50; Olson's debt to the bank, including interest, $164.77; his debt and interest to Branham for the tree claim, $915.45. Olson substantially admitted on the trial that the payment for him to the bank of the $164.77 was authorized, but he denied any right of Stevens & Co. to pay the other claims. Some 18 months after the money was paid to Stevens & Co. by the trust company, and in December, 1890, Branham died, the firm was declared insolvent, and Olson abandoned the farm and left the state.

The plaintiff became the owner of the farm in the year 1892, and February 15, 1895, procured an assignment from Olson of his alleged claim against the trust company, and commenced this action one month thereafter, which was the first notice or knowledge that it ever had that Olson claimed that it had never paid to him the $1,400 secured by his mortgage.

If Exhibit 2, upon which the trust company relied in paying the money to Stevens & Co., was binding upon Olson, it necessarily follows that the finding of the court and jury is not sustained by the evidence. He admits that he signed the order Exhibit 2. There

was evidence on the part of the defendant to the effect that this order was explained to Olson before he signed it, but this was contradicted by Olson. His testimony as to the execution of the order is substantially this:

"Q. Did you know at that time anything about the English language? A. No. Q. [Showing witness Exhibit 2.] A. Yes, that is my name. Q. Do you know when you signed that? A. No, not exactly what time that was I signed the note. Q. Do you know what that paper is? A. A note. Q. Do you think that is a note? A. Yes, that is what I think. Q. Did you ever hear this paper read? Did you hear it read here in court? A. No, never. Q. Do you know Mr. Danielson's handwriting? A. Yes, that is his handwriting all right enough. Q. [Exhibit 2 read to witness.] A. Yes, that is the receipt on the money,—to show I got the money. Q. No, that is the paper that the money should be paid to Stevens & Co. Have you heard of that paper before? Have you ever heard it read before? A. No. Q. Do you remember of Mr. Danielson asking you to sign that? A. No, I don't remember it; but I signed it that time I signed the mortgage. Q. What, if anything, did he tell you you had to sign this paper for? A. He didn't tell me anything. * * * Q. Who was present at the time you signed this,—who was there? A. There was nobody around there, only me, and Mr. Danielson, and my wife. Q. State whether or not Mr. Danielson told you what this paper was. A. No. Q. What did Mr. Danielson say to you, if anything, about this paper? A. He didn't say anything. Q. Did he ask you to sign it? A. He just gave me the papers to sign them; that is all. Q. What, if anything, did he say at that time was the reason he wanted you to sign this paper? A. He didn't say anything. Q. State what conversation you had, if any, with Mr. Danielson about signing the papers authorizing the Loan & Trust Company to pay this money to Stevens & Co.,—what talk, if any, you ever had with Danielson? A. I never had any talk about that."

On his cross-examination he testified as follows:

"Q. At the time this loan was made, who did you ask the Minnesota Loan & Trust Co. to send this money to? A. There was nothing talked about that. Q. Who did you want it sent to? A. I wanted the money myself,—wanted it sent to me. Q. Did you expect them to send it up to you? A. Yes, sir. Q. At Rosendale, did you? A. No, I expected it to be sent to Stevens & Company's bank. Q. You expected it to be sent to Stevens & Company's bank? A. Yes, for them to pay to me."

The Mr. Danielson referred to in this testimony was a clerk of Stevens & Co. The conversation between them was in the Swedish language, which Olson understood, but did not speak.

The record discloses no evidence tending to show that any representation was made by any one to Olson to induce him to sign the order, or that he requested that it be read or explained to him, or that he would not have signed it if it had been read to him. But the record does show that, after signing the order, Olson went repeatedly to Stevens & Co., and inquired for the money, and continued to do so for nearly 18 months, when the firm became insolvent, and Olson left the state; and that during this time he made no inquiry of the trust company, or communicated with it in any way, and, further, that for nearly six years after signing Exhibit 2, he remained silent, never once making any claim to the trust company that it had not paid him the $1,400.

The respondent claims that the only question raised by the evidence is, whom did Stevens & Co. represent? There is and can be no doubt as to this question. They represented the trust company in negotiating the loan, but this is no reason why Olson might not, if he chose, make them his agents for receiving the money for him; and the evidence suggests reasons why he should have so selected them.

The uncontradicted testimony is that the trust company did not intrust Stevens & Co. with its money to loan. The money was never sent to meet a loan which had been accepted until the record showed that it was secured by a first mortgage to the trust company. Then the money was sent by check, payable to the order of the mortgagor or of the party to whom he directed it to be paid. The question, then, is not, whom did Stevens & Co. represent? but, does the evidence show any legal reason why Olson or his assignee, who stands in his shoes, should be relieved from the consequences which followed his execution of Exhibit 2?

The respondent claims that the case of Larson v. Lombard Inv. Co., 51 Minn. 141, 53 N. W. 179, answers the question in his favor. In the case cited it was held that a printed clause in an application for a loan, purporting to constitute the company's correspondent to receive such applications the attorney irrevocable of the appli-

cant to procure the loan, did not preclude the applicant from showing that the correspondent was the agent of the company, and not his, and that the evidence was sufficient to establish such fact.

In the case at bar there is no claim that Stevens & Co., in taking the application for the loan, were not the agents of the trust company, or question as to the admissibility of the evidence to show that Exhibit 2 was not obligatory upon Olson, but the question here is whether the evidence establishes the claim that it is not.

The case relied upon does not control this one. It was incumbent upon the respondent, before Exhibit 2 could be treated as a nullity, to show that Olson was induced to execute it by some fraudulent act or representation of the trust company or its agent. Follansbee v. Johnson, 28 Minn. 311, 9 N. W. 882; McCall v. Bushnell, 41 Minn. 37, 42 N. W. 545; Minneapolis, St. P. & S. Ste. M. Ry. Co. v. Chisholm, 55 Minn. 374, 57 N. W. 63; Oxford v. Nichols & Shepard Co., 57 Minn. 206, 58 N. W. 865.

The evidence is not sufficient to justify a finding that Olson was induced to execute the order in question by any misrepresentation or fraud on the part of the trust company, or its agent, or any one else. The trust company having acted upon the order, and parted with its money in reliance thereon, and the greater portion thereof having been actually applied to the payment of Olson's debts, and he having kept silent for nearly six years, and until the respondent procured from him the assignment, the evidence should be clear and satisfactory that when he signed and delivered the order he did so by reason of some fraudulent act or representation of another, before the trust company can be called upon again to pay the money. The evidence falls far short of this requirement, and is not sufficient to sustain the finding of the trial court and jury to the effect that the trust company never paid to Olson the amount of its loan to him, or any part thereof.

Order reversed, and a new trial granted.