## GEORGE SCHMEISSER v. JOHN A. ALBINSON.[1]

November 29, 1912.

Nos. 17,736—(72).

**Fraud — verdict sustained by evidence.**

In an action for damages on the ground that defendant had made false representations regarding the condition, soil and previous crop of a farm traded by defendant to plaintiff, *held* that the evidence sustains the verdict.

**Charge to jury.**

There was no error in an instruction to the jury that representations made to the wife of plaintiff would be the same as if made to the plaintiff, if they found that plaintiff was a man that listened to and was governed by his wife's directions, and that the defendant knew or had reason to believe such to be the situation.

**Same.**

In actions to recover damages for fraud and deceit, an instruction that plaintiff is entitled to recover upon establishing the cause alleged by a fair preponderance of the evidence *held* correct.

**Evidence.**

No prejudicial error appears in the rulings of the court on the reception or exclusion of testimony at the trial.

[1] Reported in 138 N. W. 775.

Action in the district court for Nobles county to recover $4,500 damages for fraudulent representations in the exchange of farms. The facts are stated in the opinion. The answer alleged that, before the exchange was made, plaintiff went to defendant's land and carefully examined it and the buildings thereon. The reply was a denial of the new matter set up in the answer. The case was tried before Nelson, J., and a jury which returned a verdict in favor of plaintiff for $2,321.28. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Affirmed.

*George W. Wilson* and *E. H. Canfield,* for appellant.

*J. A. Town,* for respondent.

HOLT, J.

Action in deceit for damages resulting from misrepresentations as to the soil and condition of a farm traded to plaintiff by defendant. Defendant appeals from the order denying a new trial after verdict for plaintiff. The errors assigned here relate to the sufficiency of the evidence to support the verdict, to the charge of the court, and to rulings upon the admissibility of testimony.

Plaintiff, a farmer, owned and resided on a one hundred sixty acre farm in Nobles County, Minnesota. The defendant was in the real estate and lumber business at Worthington, Minnesota, and owned a three hundred twenty acre farm in Sherburne county. A mortgage of $2,500 was on plaintiff's farm, and one of $4,000 on defendant's. For some weeks prior to February 12, 1908, negotiations had been pending for an exchange, and during that time defendant took plaintiff to Sherburne county to see the farm. On the date mentioned the trade was made and the deeds delivered, subject to the stated mortgages.

The false representations alleged to have been made by defendant and on the strength of which plaintiff claims he traded farms, relate to the market value of the Sherburne county farm, its soil, its crop the year previous, and the condition of the buildings. The claim of the plaintiff was that defendant represented the farm to be of the value of $29.50 per acre, that the soil was black loam on a clay

subsoil, that the one-third of the previous year's crop netted defendant $900, and that the buildings were in good repair. We may dismiss the misrepresentation as to the market value as being mere trade talk, for apparently that issue was not submitted to the jury. The evidence of plaintiff was to the effect that the farm was represented to be good farming land, that defendant the year previous realized $900 for his share of the crop, that the soil was black loam on a clay subsoil, or, as plaintiff expressed it, black clay soil, and that the buildings were in good condition. If these representations were made, there is no doubt that they were false in this respect; that the farm was run down so that only poor crops could be raised; that instead of receiving $900 for his one-third share of the crop the year previous, defendant received nothing and permitted the tenant to retain the insignificant crop then raised; that the soil, instead of being black clay, had scarcely a trace of clay anywhere and was a light sandy loam; and that the roofs of certain of the buildings were out of repair. Of course defendant's contention was that he never represented the soil other than sandy; said nothing about the previous crop, or the buildings, but that plaintiff examined carefully both buildings and soil, the ground being then bare, and after such examination made the deal. Plaintiff contended that there were some two or more inches of newly fallen snow when he got to the farm, so that the condition of the roofs of the buildings or the character of the soil could not be ascertained. He also says defendant supplied him with liquor on the way out to look at the farm, and when once there hurried him away.

A reading of the printed record gives the impression that plaintiff knows the English language imperfectly and is rather dull of comprehension; that his experience and mental capacity are such that he might readily fall a victim to the plausible and designing. At any rate, his wife, who ought to know him, seemed to entertain well-grounded fears on that score and so stated to defendant. Defendant, on the other hand, appears to have been an experienced business man, keen, alert, and coherent in his testimony, and apparently able to appreciate its effect on the issues involved. In any business deal he would undoubtedly have a great advantage over plaintiff, were he

disposed to use it to plaintiff's loss. Notwithstanding that defendant's testimony appears plausible on the printed page, the jury found that of plaintiff and his wife the more credible. The trial court, who had the opportunity of observing the witnesses and their manner of testifying, considered the verdict righteous. We have read the record with care and find no valid reason for holding that the evidence fails to sustain the verdict by a fair preponderance.

It appeared that defendant talked over the proposed trade with both the plaintiff and his wife on more than one occasion before it was made. After the husband had been to see defendant's farm and before the deeds were passed, the wife saw defendant alone and stated that she was afraid the defendant would cheat or beat plaintiff, that defendant then said his land was good clay soil, and that if her husband "don't do that deal it is [her] fault because he got a chance to get a good deal." When asked to state all that was said she answered: "Well, I say 'if he do that deal we take it on your word, after your statement, and not on account of him being up there and look after the land, because there was snow on the ground, and if it is so good as you say we come up tomorrow and make the papers,' and Albinson say, 'you find it better than what I stated to you, and I am sure you will like yourself up there.' " The next day the deeds were exchanged.

Other parts of the evidence also contained suggestions that the wife was brighter and less confiding than her husband and probably was at the helm. The court in this respect said to the jury: "I instruct you upon that point that, if you find from the evidence that the plaintiff was a man that listened to and was governed by his wife's directions, and that the defendant knew or had reason to believe that, any statement made to the plaintiff [or] his wife, or to either of them, would be the same as if it had been made to the plaintiff." The defendant challenges this instruction as being without basis in the evidence. To us it seems otherwise. Apart from the momentous occasion to this husband and wife, trading off the farm which gave the family the only shelter and livelihood it had for another to serve the same purpose, it is but natural that both should take a keen and united interest therein and exert an influence

upon each other. Add to that the manifest inequality of mental make-up between the wife and husband, and we fail to see wherein the instruction was not both appropriate and correct.

The defendant also assigns as error the refusal to instruct that the burden was on plaintiff to prove the alleged misrepresentations by clear and satisfactory evidence. The court did instruct thus on that proposition: "In determining these questions you are instructed that fraud is never presumed, but must always be proved by clear and satisfactory evidence. In this case the burden of proving the alleged fraudulent representations by a fair preponderance of evidence is upon the plaintiff. The evidence in support of the alleged fraudulent representations must outweigh the opposing evidence."

The rule is general that in actions to set aside and annul a written instrument on the ground that it was procured by fraud the evidence must be clear and strong. Jumiska v. Andrews, 87 Minn. 515, 92 N. W. 470; Dart v. Minnesota Loan & Trust Co. 74 Minn. 426, 77 N. W. 288; Oxford v. Nichols & Shepherd Co. 57 Minn. 206, 58 N. W. 865; Maxfield v. Schwartz, 45 Minn. 150, 47 N. W. 448; McCall v. Bushnell, 41 Minn. 37, 42 N. W. 545. But we think that in actions founded on fraud and deceit, where no formal written instrument is assailed, the rule is established in this state that a fair preponderance of the evidence will warrant a finding in favor of the litigant upon whom is the burden of proof. Of course the one accused of fraud and deception has always the benefit of the presumption of honest and fair conduct, so that his adversary, in order to prevail, must adduce testimony not only to bear down this presumption, but such other evidence as the one accused of fraud may offer in denial of the charge. That such is the holding of this court appears from Martin v. Hill, 41 Minn. 337, 43 N. W. 337, and in Berkey v. Judd, 22 Minn. 287, where it is said "that fraud is never to be presumed, but must be proved, yet this rule does not require direct, positive proof in all cases, but is satisfied if the facts and circumstances surrounding the alleged fraudulent transaction are such as reasonably point to the conclusion that a fraud was intended and actually perpetrated; and where such facts and circumstances exist, their force and effect in determining the question is a

matter peculiarly within the province of the referee to settle and decide." Where the issue of fraud is submitted to a jury, it is within their province to draw conclusions from facts established by a fair preponderance of the evidence. That the profession understand that in ordinary actions for fraud and deceit a fair preponderance of the evidence establishing the charge is sufficient to warrant a recovery may be inferred from the fact that many cases have come to this court wherein instructions of that tenor have been given to the jury without objection, and 1 Dunnell, Minn. Dig. § 3839, states the law to the same effect. We see no reason to depart from this rule. Those bent on overreaching others by fraud and deceit usually are proficient in planning and carrying out the scheme so as to give the false representations the semblance of truth, and also to circumvent responsibility for the wrong. Clear and satisfactory evidence in such cases is, in the nature of things, almost impossible to produce, if we consider the versatility and unscrupulousness of one guilty of planned deceit to fabricate and present a plausible story on the witness stand. Stocks v. Scott, 188 Ill. 266, which defendant places reliance on, states the rule to be that fair preponderance of the evidence is all that is required to establish fraud. See also note to Lepley v. Andersen, 33 L.R.A.(N.S.) 836, where, on page 837, the cases holding the same as we, are cited.

The rulings on the introduction of evidence assigned as error we do not feel called upon to discuss, because counsel, neither in the brief nor in the oral argument, pointed out or suggested wherein error lay, and upon such examination as we have been able to give these rulings, we find none that appear wrong or prejudicial to defendant.

The order must therefore be affirmed.