Howard P. SIEVERT, Appellant,

v.

Donald D. LaMARCA, et al.,
Respondent,

First State Bank of Lakefield,
Respondent,
and
Dawn Sievert, additional party to counterclaim, Appellant.
and
FIRST STATE BANK OF LAKEFIELD, Respondent,

v.

Donald D. LaMARCA, et al.,
Respondents,

Howard P. Sievert, Appellant.

No. C2-84-1501.

Court of Appeals of Minnesota.

May 14, 1985.

Review Denied July 17, 1985.

James Malcolm Williams, Minneapolis, for appellant.

John I. Halloran, Lacklan B. Muir, Minneapolis, for LaMarca et al.

J. David Jackson, Minneapolis, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and FOLEY and LESLIE, JJ.

## OPINION

FOLEY, Judge.

This case involves the financing and construction of a home for Dr. Donald LaMarca. The project was financed with loans from the First State Bank of Lakefield to LaMarca and to general contractor Howard Sievert. The loan to LaMarca was secured by a mortgage on the home, and the loan to Sievert by assignment of a contract for deed on Sievert's farm. LaMarca promised to pay Sievert and the bank from the proceeds of the sale of property in Illinois. LaMarca did not pay Sievert. Both he and Sievert defaulted on their respective bank loans.

Sievert brought a mechanic's lien foreclosure action claiming his lien took priority over the bank mortgage against the LaMarca house. LaMarca crossclaimed for negligent construction. The bank sought to foreclose on the mortgage and the contract for deed to satisfy LaMarca's and Sievert's respective debts, and Sievert counterclaimed against both LaMarca and the bank for breach of contract and fraud.

The case was tried to the court with an advisory jury by consent of the parties under Minn.R.Civ.P. 39.02. The trial court found that Sievert is not entitled to a mechanic's lien against the LaMarca home. The bank mortgage takes priority over all other claims. It ordered sale of the LaMarca house to satisfy the mortgage. The special verdict of the jury resulted in rulings adverse to appellant Sievert on the negligence issues, contract issues, fraud and damages.

The court also found that the bank has an equitable mortgage against the Sievert farm. However, despite the absence of fraud or breach of contract by the bank, the court concluded that the bank is equitably estopped from foreclosing that mortgage. It reformed the payment schedule for Sievert's loan.

Finally, upon the special verdict, the court found no fraud by LaMarca or the bank. It held that damages caused by Sievert's negligent construction of the home exceeded the amount LaMarca owed Sievert for the project. The court entered judgment for LaMarca against Sievert for the difference.

Sievert appeals, seeking cancellation of the bank's equitable mortgage, cancellation of his debt to the bank, entry of judgment on his mechanic's lien claim, and a new trial on his claims against LaMarca and the bank. The bank cross-appeals, seeking leave to foreclose its equitable mortgage against the Sievert farm. LaMarca seeks correction of a computation error and double costs and attorney fees under Minn.R. Civ.App.P. 138 for those portions of the appeal which he claims are frivolous.

## FACTS

In February 1977, Dr. Donald LaMarca moved to Lakefield, Minnesota from Glen

Ellyn, Illinois. That fall he hired Howard Sievert to construct a luxury home for his family. According to LaMarca, his architect, and the building permit application, Sievert agreed to build the home for $180,000. According to Sievert, the project was a "materials and labor contract."

The First State Bank of Lakefield advanced LaMarca $125,000 to finance the home. The loan was secured by a mortgage on the property. LaMarca assured the bank that the loan would be repaid from the proceeds of the sale of his home in Illinois.

In January 1978, the bank informed LaMarca that it would not lend him additional money to complete the house. LaMarca asked Sievert to obtain a construction loan to complete the project. According to LaMarca, he promised Sievert that he would repay the bank $55,000 of whatever amount Sievert borrowed. That figure represented the quoted purchase price less the money already advanced Sievert for construction of the house. ($180,000 – $125,000). According to Sievert, LaMarca promised to repay all of the loan applied to construction of the LaMarca house.

Sievert borrowed $177,000 from the First State Bank. He and his wife assigned to the bank a contract for deed to a farm as security. According to Sievert and his wife, LaMarca and bank president Bernard Rue induced him to put up his farm as collateral by promising that he would be paid first from the proceeds of the sale of LaMarca's Illinois house. Rue assumed that Sievert would be repaid from the proceeds, but denied any bank guarantee of repayment by LaMarca.

According to Sievert and some of the workers, construction was slowed and costs elevated by lack of detailed plans and by LaMarca's frequent change of orders. LaMarca countered that he merely demanded some work be redone because of shoddy construction. LaMarca, his architect, and a building contractor testified concerning the home's numerous structural and cosmetic defects.

LaMarca's family moved into the partially completed house in November 1978. Later that month, the home was damaged by a boiler fire. After the fire, the parties had a falling out, and Sievert ceased work on the home. LaMarca took over supervision and payment of workers.

In May 1979, LaMarca sold his Illinois home. From the proceeds he paid the bank $32,500 and Sievert $10,000. Neither LaMarca nor the bank informed Sievert that the Illinois house had been sold until the proceeds had been fully disbursed.

LaMarca moved from Lakefield in September 1979 and ceased making payments on his bank loan in 1981. Sievert failed to pay his bank loan when it fell due in January 1980.

## ISSUES

1. Was Sievert denied a fair trial by:
a. the bank's leading cross-examination of LaMarca,
b. admission of testimony by a caretaker and a housing contractor, and/or by
c. jury misconduct?

2. Did the trial court err in submitting the following issues to the jury:
a. the existence of a contract,
b. costs of changes and additions,
c. diversion of funds by Sievert, and/or
d. Sievert's negligence in construction of the home?

3. Did the trial court err in finding as a matter of law that Sievert is not entitled to a mechanic's lien against the LaMarca house?

4. Did the trial court err in denying appellant's motion for a new trial on the following grounds:
a. the evidence was insufficient to support the verdict;
b. excessive damages award;
c. error in jury instructions on the burden of proof for fraud?

5. Did the trial court err in prohibiting foreclosure of the bank's equitable mortgage?

6. Did the trial court err in its computation of the judgment against Sievert in favor of LaMarca?

7. Was respondent LaMarca entitled to attorney fees and double costs under Minn. R.Civ.App.P. 138?

### Fair Trial Claims

■ 1(a). The trial court did not abuse its discretion in allowing the bank, over Sievert's objection, to ask leading questions during its cross-examination of LaMarca. Minn.R.Evid. 611(c) permits leading questions on cross-examination.

1(b). Without further explanation, Sievert contends that the trial court "erroneously allowed unqualified farmers to testify as construction engineers as to standards of care, damages and, by implication, causality." He is apparently referring to testimony by caretaker Roger Hotzler and housing contractor Donald Jensen.

■ Hotzler testified only as to the physical appearance of the house as foundation for admission into evidence of photographs he took of the house. Jensen's qualifications as an expert in home construction were established by his testimony that he built between 60 and 70 houses during his 35 years in the construction business. A trial court has broad discretion in determining the sufficiency of the foundation laid for an expert opinion, and its decision will not be reversed except for a clear abuse of that discretion. *Wenner v. Gulf Oil Corp.,* 264 N.W.2d 374, 382 (Minn.1978). Here, the court did not abuse its discretion.

■ 1(c). Sievert contends that during voir dire one juror tried to get excused by asking questions and leaving the jury box. When this failed, the juror allegedly tried to contact LaMarca's attorney to retain him in a separate matter. However, there is no evidence in the record to support the misconduct claim. Sievert did not take any of the three options open to him to create a record for review. He did not ask that voir dire be recorded. He did not ask for a hearing on the juror's competence

pursuant to *Schwartz v. Minneapolis Suburban Bus Co.,* 258 Minn. 325, 104 N.W.2d 301 (1960). He did not prepare a statement of proceedings pursuant to Minn.R.Civ. App.P. 110.03.

■ There can be no review of issues for which there is not a supporting record. Sievert, as the appealing party, had the burden of providing an adequate record for appeal. He failed to meet that burden, so his jury misconduct claim must be dismissed. *Custom Farm Services, Inc. v. Collins,* 306 Minn. 571, 238 N.W.2d 608 (1976).

■ In any event, Sievert waived his objection by failing to raise it at trial.

> * * * At the first suspicion of misconduct, the attorney for the losing party [Appellant here] should bring the matter to the attention of the trial court. If this procedure is not followed, the issue may not be raised for the first time in a motion for a new trial. * * *

*Zimmerman v. Witte Transportation Co.,* 259 N.W.2d 260, 262 (Minn.1977) (cite omitted). A party may not keep silent and then attempt to take advantage of jury misconduct in the event of an adverse verdict. *State v. Durfee,* 322 N.W.2d 778, 786 (Minn.1982).

### Denial of Directed Verdict

■ 2. Sievert contends that the trial court erred in not directing a verdict in his favor on several issues. A directed verdict is appropriate only in those cases where:

> (1) in light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case.

*Peterson v. Little-Giant Glencoe Portable Elevator,* 366 N.W.2d 111 (Minn.1985); *Raddatz v. Northland Development Co. of Minneapolis,* 352 N.W.2d 474, 477 (Minn. Ct.App.1984). The evidence must be viewed in the light most favorable to the parties opposing the motion, in this case, LaMarca and First Lakefield. *See Para-*

*dise v. City of Minneapolis*, 297 N.W.2d 152, 155 (Minn.1980); *Hanson v. Homeland Insurance Co.*, 232 Minn. 403, 404, 45 N.W.2d 637, 638 (1951).

■ 2(a). The court properly refused to find that *as a matter of law* a contract existed. The existence and the terms of the contract were in dispute. The jury found a contract existed between Sievert and LaMarca for the construction of the house. The disputes which arose with respect to negligence and related issues were submitted to the jury and resolved against appellant. "Only where the facts are undisputed and reasonable minds can draw but one conclusion from them does the question for determination become one of law for the court." *Conover v. Northern States Power Co.*, 313 N.W.2d 397, 401 (Minn.1981).

■ 2(b). The trial court properly refused to find *as a matter of law* that costs of changes and additions were included in the contract price. The parties disputed the nature of the contract; the jury found it was a set price contract for $180,000. There was a dispute regarding whether charges for the swimming pool, sky light, etc. were included in the contract. The trial court correctly left the determination to the jury which found against appellant.

■ 2(c). The trial court did not err in submitting to the jury the issue of Sievert's diversion of funds. Sievert claims LaMarca promised to pay for all time and materials which went into the house; LaMarca claims the contract was for a set price. The jury agreed with LaMarca. Therefore, the amount Sievert spent on the house is now irrelevant. Nonetheless, the court did not err in submitting the issue to the jury in light of the conflicting claims.

■ 2(d). The trial court properly submitted to the jury the issue of Sievert's negligence. There was substantial testimony on this issue. To remove an issue from the jury requires that any finding of negligence would be manifestly contrary to the evidence. *Midland National Bank v. Perranoski*, 299 N.W.2d 404 (Minn.1980).

*Dismissal of Sievert's Mechanic's Lien*

■ 3. Mechanic's liens are purely statutory creatures, and there must be strict compliance with the statute if such liens are to be perfected. *Diethelm v. Cavanaugh*, 349 N.W.2d 608, 610 (Minn.Ct. App.1984). Sievert was the general contractor for the building of the LaMarca house; he contracted with and paid laborers and materialmen. He asserted his right to a lien based on this work. Minn. Stat. § 514.011, subd. 1 (1982), requires a notice from every person "who enters into a contract with the owner for improvement of real property who has contracted * * * with any subcontractors or materialmen to provide labor, skill or materials * * *." Sievert did not provide this notice. The trial court correctly concluded he had no mechanic's lien and made this ruling as a matter of law.

*Denial of Motion for New Trial: Fraud Claims*

■ 4(a). Sievert claims the court erred in denying his motion for a new trial on several grounds. First, Sievert argues that the jury's answers to several special verdict questions are unsupported by the facts and, under Minn.R.Civ.P. 59.01(7), a new trial was proper. The standard for reviewing jury verdicts is as follows:

All testimony must be considered in the light most favorable to the prevailing party * * * and a verdict will only be disturbed if it is manifestly and palpably contrary to the evidence. * * *

*Paripovich v. Hayden-Murphy Equipment Co.*, 358 N.W.2d 67, 70 (Minn.Ct.App. 1984) (cite omitted).

■ The supreme court has identified a similar standard for setting aside an answer to a special verdict. *Jacobs v. Rosemount Dodge-Winnebago South*, 310 N.W.2d 71, 76 (Minn.1981). Both parties submitted evidence concerning the existence and nature of the contract, Sievert's negligent construction, LaMarca's ordered changes in construction, and fraud. The jury's findings on these issues were

against the appellant and are not manifestly contrary to the evidence.

4(b). Sievert also claims the damages award was so excessive with respect to jury findings 1, 4, 20, and 21 in the special verdict as to be the product of passion or prejudice. He argues that under Minn.R.Civ.P. 59.01(5), the court erred in denying a motion for a new trial. A new trial on damages will be ordered where the verdict is so excessive that it could only have been rendered on account of passion or prejudice. *Seim v. Garavalia*, 306 N.W.2d 806, 813 (Minn.1981). Both parties presented conflicting evidence on the issues of the nature of the contract, the amount of money Sievert applied from sums borrowed from First Bank to construction of the LaMarca home, negligence and damages.

In the jury findings which Sievert challenges, the jury found: there was a set price contract for $180,000 between Sievert and LaMarca; Sievert applied $40,000 of the money he borrowed from the bank to the construction of the LaMarca home. The jury found Sievert 60% negligent and LaMarca 40% negligent. The jury also found LaMarca's damages were $62,000. Under comparative fault, Sievert's liability was $37,200. The award was not so excessive as to constitute prejudice.

We are mindful of the fact that ordinarily the comparative fault statute does not apply to contract cases. *Lesmeister v. Dilly*, 330 N.W.2d 95, 101 (Minn.1983). However, here, no party made any objection to the special verdict form submitting both contract and negligence claims asserted between LaMarca and Sievert. Therefore, the instructions of the trial court became the law of the case. *See Bethesda Lutheran Church v. Twin City Construction Co.*, 356 N.W.2d 344 (Minn.Ct.App.1984); *Mike's Fixtures, Inc. v. Bombard's Access Floor Systems, Inc.*, 354 N.W.2d 837 (Minn.Ct.App.1984).

4(c). Finally, Sievert appealed denial of his motion for a new trial based on several jury instructions, claiming prejudicial error. Minn.R.Civ.P. 51 requires that a party must object to unintentional misstatements and verbal errors or omissions in the charge before the jury retires. The party must preserve in the record the specific matter to which and the grounds on which he objects. *Murphy v. City of Minneapolis*, 292 N.W.2d 751, 755 (Minn.1980). A party may assign an error in instruction with respect to fundamental law in a motion for a new trial. Minn.R.Civ.P. 51. Failure to raise timely objections precludes challenging jury instructions for the first time on appeal. *Wolner v. Mahaska Industries, Inc.*, 325 N.W.2d 39 (Minn.1982). Sievert made no objection to jury instructions at trial. The only jury instructions subject to review, therefore, are those which Sievert raised in his motion for a new trial as error of fundamental law.

Sievert challenged in his motion for new trial the jury instructions on the burden of proof for fraud. The court instructed the jury: "Now, where fraud is concerned, fraud has to be proved by what we call clear and convincing evidence * * *." Sievert claims the instruction should have been a fair preponderance of the evidence. Sievert was attacking a written contract, the promissory notes securing his loan from First Lakefield, on the grounds of negligent misrepresentation and fraud.

The supreme court reviewed the complex history of the burden of proof for fraud in Minnesota cases in *Martin v. Guarantee Reserve Life Insurance Co.*, 279 Minn. 129, 134–37, 155 N.W.2d 744, 748–49 (Minn.1968). In earlier cases, the court had held that there were two separate standards of proof for fraud. If the plaintiff were seeking to avoid the effects of a written contract by claiming fraud, the burden of proof was clear and convincing evidence. If the claim were for damages based on the fraud, the lower standard of fair preponderance of the evidence was proper. *Schmeisser v. Albinson*, 119 Minn. 428, 432, 138 N.W. 775, 776 (1912). Subsequently, the court altered its view, holding that there was no difference in the quantum of proof required in establishing

misrepresentation in an action to recover damages and in a suit to rescind a contract. *Mandel v. Brooks*, 165 Minn. 490, 491, 206 N.W. 727 (1926). In *Martin* the court concluded:

> * * * While the post-*Mandel* cases have not always been consistent, most have abandoned the distinction and followed the view that a "fair preponderance of the evidence" justifies relief in either a suit for rescission or one for damages based on fraud * * *.

*Martin*, 279 Minn. at 136, 155 N.W.2d at 749.

Two years after *Martin*, the court appears to have returned to the higher standard of proof, requiring clear and convincing evidence where a party seeks to rescind a written instrument. *Weise v. Red Owl Stores, Inc.*, 286 Minn. 199, 203, 175 N.W.2d 184, 187 (1970) (relying on *Nelson v. Berkner*, 139 Minn. 301, 166 N.W. 347 (1918). *Weise* does not discuss the *Martin* decision on the burden of proof for fraud. Whatever the basis for the *Weise* holding, we are aware of no case which has overruled *Martin* on the burden of proof standard. Therefore, we hold that a fair preponderance of the evidence is the rule in Minnesota for proof of fraud. Although the court erred in this instruction, it is not reversible error.

■ Jury instructions must be construed as a whole. Errors are fundamental if they "destroy the substantial correctness of the charge as a whole," cause a miscarriage of justice, or result in substantial prejudice. *Lindstrom v. Yellow Taxi Co.*, 298 Minn. 224, 229, 214 N.W.2d 672, 676 (1974) (cites omitted).

Here, the court gave the following instruction on fraud:

> A person is liable for fraud if he makes a false representation of *a past or existing material fact* susceptible of knowledge knowing it to be false or of his own knowledge without knowing it is true or false, with the intention to induce the person to whom it is made to act in reliance, or under such circumstances that such person is justified in acting in reliance upon it, and such person is thereby deceived and induced to act in reliance upon it to his pecuniary damage.

(Emphasis supplied).

■ There is no foundation for Sievert's fraud claim since it is based on the *future expectation* of the sale of LaMarca's home in Illinois. Sievert's testimony indicates LaMarca promised at every meeting that his house in Illinois should sell any day, and there would not be any problems financing the rest of the house. Sievert admitted that if it had not been for this promise of a future expectation, he would not have signed the documents First Lakefield required to make more money available for completing LaMarca's house. Each witness who addressed this subject, whether on direct or cross-exam, spoke in terms of the *future sale* of the Illinois house, if and when it occurred.

■ The Minnesota Supreme Court has held that " * * * a representation of expectation as to future acts or events is not sufficient ground for the charge of fraud * * *. Such representations are not treated as assertions of existing facts and amount to nothing more than conjectures of future events." *Cady v. Bush*, 283 Minn. 105, 109, 166 N.W.2d 358, 361 (1969); *see also, Dollar Travel Agency, Inc. v. Northwest Airlines, Inc.*, 354 N.W.2d 880, 883 (Minn.Ct.App.1984). Since Sievert was not relying on a material representation of a past or existing fact when he signed the promissory notes for the bank, the error in the court's instruction on burden of proof for fraud was not prejudicial.

### Enforcement of Bank's Mortgage

■ 5. First Lakefield appealed the court's conclusion that, despite a finding of a mortgage, First Lakefield was equitably estopped from foreclosing the mortgage. The application of the doctrine of equitable estoppel requires that the party to be estopped must: (1) have made a misrepresentation of or concealed a material fact where there was a duty to reveal, (2) have known the representation was false,

(3) intend that the other party will act upon the misrepresentation. *Lunning v. Land O'Lakes*, 303 N.W.2d 452, 457 (Minn.1980). The party asserting estoppel must have reasonably relied to his detriment on the misrepresentation or concealment. *Brenner v. Nordby*, 306 N.W.2d 126, 127 (Minn. 1981).

■ There is no finding that First Lakefield misrepresented or concealed a material fact. Both the trial court and jury found First Lakefield did not commit fraud, and as stated in this opinion, there was no basis for a fraud action. None of the court's findings conclude the bank's actions rise to the level necessary for applying equitable estoppel. Court finding no. 12 concludes that the bank never informed Sievert that the LaMarca house in Illinois had been sold until the proceeds of the sale had been fully disbursed. First Lakefield had no duty to inform Sievert because, as both the court findings and special verdict answers indicate, it had no contract with him. The trial court erred in applying the doctrine of equitable estoppel to prevent First Lakefield from foreclosing its mortgage against the Sievert farm.

### Error in Computation of the Judgment Award

■ 6. LaMarca claims an error in computation of the judgment amount awarded to him. The court found LaMarca had agreed with Sievert to a set price contract of $180,000, and that LaMarca had paid Sievert $152,441.76. LaMarca still owed Sievert $27,558.24. The negligence of Sievert and LaMarca, with respect to the house construction, caused $62,000 in damage to LaMarca, Sievert's negligence representing 60% of this amount or $37,200. The trial court then offset LaMarca's liability with the negligence of Sievert.

$37,200.00
27,558.24
9,641.76

The trial court awarded LaMarca $8,641.76, a computation error of $1,000. The award to LaMarca should be $9,641.76.

### Attorney Fees and Double Costs under Minn.R.Civ.App.P. 138

■ 7. LaMarca claims attorney fees and double costs under Minn.R.Civ.App.P. 138. Rule 138 provides:

> If an appeal delays proceedings on the judgment of the trial and appears to have been taken merely for delay, the appellate court may award just damages and single or double costs to the respondent.

To award damages under Rule 138, it must be apparent that the appeal was taken merely for delay. *Nichols v. Rodgers*, 112 Minn. 250, 127 N.W. 923 (1910). Although the appellant did not prevail on any issue, the denial of a new trial based on the jury instruction defining the burden of proof for fraud raised a sufficient question to justify the appeal. Respondent is not entitled to attorney fees and double costs under Rule 138.

We observe that this case covers some 1500 pages of transcript in a trial of several weeks. Many issues have been raised, the jury has spoken, the court has issued its findings, and except with respect to the equitable mortgage and an error in computation to which we have referred, all parties were treated fairly. The case should end.

In every trial there is some error. While trials are not expected to be perfect, the litigants have the right to expect that the trial be fair. The court in this case has satisfied that expectation, subject to the modifications we have noted.

### DECISION

We affirm the trial court as follows:

1. Sievert was not deprived of a fair trial;

2. A directed verdict was properly denied to Sievert;

3. Dismissal of Sievert's mechanic's lien was appropriate;

4. Denial of Sievert's motion for a new trial was proper.

We reverse the trial court's prohibition of enforcement of First Lakefield's mortgage on Sievert's farm. We also remand for correction the computation error of $1,000 in the judgment award to LaMarca. We deny respondent LaMarca's request for attorney fees and double costs under Minn. R.Civ.App.P. 138.

Affirmed in part, reversed in part and remanded to proceed in accordance with this opinion.