George M.
**THISTLETHWAITE, Appellant,**

v.

**Peter GROVER, Respondent.**

No. C1–86–1686.

Court of Appeals of Minnesota.

May 12, 1987.

Scott Richardson, Richardson & Richardson, Austin, for appellant.

William J. Baudler, Baudler, Baudler & Maus, Austin, for respondent.

Heard, considered, and decided by CRIPPEN, P.J., and WOZNIAK and MULALLY, JJ.*

## OPINION

EDWARD D. MULALLY, Judge.

Appellant George M. Thistlethwaite brought this action against respondent Peter Grover seeking damages for injuries he sustained while engaged in repair work at respondent's rental property. The trial court bifurcated the proceedings to determine the validity of releases issued by respondent's home owner's insurer and signed by appellant. The court held that the releases were valid. Appellant appealed from the judgment. We affirm.

## FACTS

On September 22, 1982, appellant, a self-employed carpenter and building contractor, fractured his left wrist while engaged in repair work at appellant's rental property. Two days later, appellant sought medical attention at the Austin Medical Clinic. The treating physician applied a splint and bandage to the wrist and advised appellant to avoid strenuous work for at least one year. Despite this advice, appellant returned to work less than three weeks after the accident.

On October 28, 1982, approximately one month after the accident, appellant met with Gary Kautz, a claims representative employed by respondent's insurer. The meeting took place at appellant's request and in his mother's home. Appellant accepted a check for $4,000 from Farmer's Insurance Group and signed a release which provided that the $4,000 was in full settlement of all claims against respondent.

The evidence, uncontroverted at trial, revealed that appellant did not read the release, made no attempt to put on his glass-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

es, and neither requested that the release be read to him nor consulted with an attorney. In fact, appellant testified that he signed the release despite the advice of his family physician not to sign off on any claims. Appellant further testified that no one prevented him from reading the release. Nevertheless, appellant claimed that he believed he was not signing away his rights to pursue a claim against respondent but, rather, that he was receiving a receipt for payment of medical bills and loss of income.

Approximately five months later appellant again contacted Kautz. He advised Kautz that his medical expenses were more than he had anticipated and that he needed more money. Kautz reviewed appellant's medical records, confirmed the additional expenses, and then arranged a second meeting with appellant on March 16, 1983. Kautz testified that this meeting went much as the first: he advised appellant that an additional payment of $5,000 would be made to him in "full and final settlement" of any and all claims against respondent. Kautz further testified that at this meeting appellant read the release before signing it. Respondent also introduced evidence that appellant's additional medical expenses resulted from a reinjury to his wrist caused by his premature return to work.

Appellant presented conflicting testimony that he became suspicious when Kautz told him that the $5,000 check "would take care of everything." He testified that when he asked Kautz what he meant, Kautz replied, "well until we find out what is really going to happen * * * when you see Dr. Lilly." Appellant also testified that he was required to sign the release before receiving the second check. Appellant's mother testified that her son verbalized his hesitancy in signing the release several times, but that he finally submitted when Kautz informed him that he was late for another appointment. Appellant testified further that he believed that he had been fairly treated by Kautz, that no one prevented him from reading the release, and that he would have understood the release had he read it. Appellant testified that he

was a high school graduate and had drafted several construction contracts.

Appellant testified that after the second meeting, he was advised by his attorney to settle for $20,000. Once again, he contacted Kautz. He testified that he demanded an additional $11,000 and that Kautz made a counteroffer of $6,000. Kautz testified that he had not made a counteroffer, but had informed appellant that the March 16th release constituted a full and final settlement, and had refused to negotiate further. Appellant then commenced this action to set aside the releases and to recover damages.

Before trial, the parties agreed to sever the issue of the settlement's validity and expressly waived a jury trial. The trial court found that both parties clearly understood the nature of the releases and, further, that appellant would have understood the release if he had read it. The court found that Kautz did not fraudulently induce appellant to execute the release. Accordingly, the court held that the releases were valid and were a complete defense to appellant's claim and dismissed the action.

## ISSUE

Did the trial court err in finding that the releases were not fraudulently procured?

## ANALYSIS

Respondent claims that appellant cannot recover on his claim of fraudulent inducement, citing *Yocum v. Chicago, Rock Island & Pacific Railway Co.*, 189 Minn. 397, 249 N.W. 672 (1933). *Yocum* is on all fours with this case, involving a plaintiff who signed a release in full settlement of his claims against defendant, but sought to have it set aside for fraud, claiming that he had not read the form and was unaware of its true nature. The supreme court stated:

An instrument of the plain significance of this one cannot be set aside and avoided upon testimony of such an improbable and incredible nature as that he could not read without his glasses, or that he was told that the instrument was merely a

receipt. It is inconceivable that a man of plaintiff's intelligence and experience would have signed what he must have known was an absolute release and discharge of all liability on the bare statement of defendant's agent that it was not a release, but simply a receipt for an advancement made. It was plaintiff's duty to ascertain what the provisions of the instrument he was about to sign were. His admitted failure so to do was inexcusable negligence. He cannot simply by saying he did not read it escape its force and binding effect. A written contract is the highest evidence of the terms of an agreement between the parties to it.

189 Minn. at 404, 249 N.W. at 675.

Appellant argues that *Marino v. Northern Pacific Railway Co.,* 199 Minn. 369, 272 N.W. 267 (1937) supports his contention that he was fraudulently induced to sign the agreement. We disagree. *Marino* involved an illiterate plaintiff who was incapable of reading the release to determine its character. Appellant is a high school graduate who has had experience in drafting contracts. Thus, *Yocum* applies to the facts of this case and precludes recovery.

■ Appellant claims that this case must be remanded because the trial court incorrectly held plaintiff to a higher standard of proof. The court determined that plaintiff had not proved fraud by clear and convincing evidence. Appellant argues that the proper quantum of proof required to show fraud was by merely a preponderance of the evidence. *See Sievert v. LaMarca,* 367 N.W.2d 580, 588–89 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. July 17, 1985); *Martin v. Guarantee Reserve Life Insurance Co.,* 279 Minn. 129, 134, 155 N.W.2d 744, 747 (1968) (in both an action for rescission and an action for damages based on fraud in the inducement, plaintiff need prove his case only by a preponderance of the evidence).

We need not decide this issue since appellant neither objected at trial nor raised the issue in a motion for a new trial. Instead, he raises this issue only on his appeal from the judgment. In *Gryc v. Dayton-Hudson*

*Corp.,* 297 N.W.2d 727 (Minn.), *cert. denied,* 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980), the trial court incorrectly instructed the jury on the issue of punitive damages, using a preponderance-of-the-evidence burden, rather than the required clear-and-convincing burden of proof. The supreme court ruled that since respondent had not objected to this error at trial nor raised the error in a post-trial motion, the charge to the jury became the law of the case and was not subject to attack or review on appeal. *Id.* at 738–39.

This court unequivocally stated in *Sauter v. Wasemiller,* 364 N.W.2d 833 (Minn. Ct.App.1985), *aff'd,* 389 N.W.2d 200 (Minn. July 27, 1986), "[w]e will not review errors occurring at trial that are not the subject of a motion for a new trial." *Id.* at 836. The justification for this holding is that the trial court has not been given an opportunity to correct its mistake and to avoid the expense and inconvenience of an appeal. *Id.* We further note that even if the court had held appellant to the lower standard of proof, *Yocum* would preclude a recovery, since appellant's sole defense was that he did not read the document.

■ Appellant further attempts to set aside the releases on the grounds that the amount paid to him in settlement of his claim was so inadequate as to be unconscionable, and that the releases were executed as a result of mutual mistake. The Minnesota Supreme Court has held that inadequacy of the consideration is not a ground for setting aside a release. *Dolgner v. Dayton Co.,* 182 Minn. 588, 592, 235 N.W. 275, 277 (1931). Moreover, appellant has not presented any evidence to support a finding of mutual mistake.

## DECISION

The decision of the trial court is affirmed.